# United States Court of Appeals
# for the Federal Circuit

---

**JAY ANTHONY DOBYNS,**
*Plaintiff-Cross-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2015-5020, 2015-5021, 2017-1214

---

Appeals from the United States Court of Federal Claims in No. 1:08-cv-00700-FMA, Senior Judge Francis M. Allegra, Judge Patricia E. Campbell-Smith.

---

Decided: February 6, 2019

---

JAMES BERNARD REED, Baird Williams & Greer LLP, Phoenix, AZ, argued for plaintiff-cross-appellant. Also represented by ANNELISE MARI DOMINGUEZ.

MARTIN F. HOCKEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT.

---

Before LOURIE, BRYSON, and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

This is an action for breach of a 2007 settlement agreement ("2007 agreement") between the government and Jay Anthony Dobyns. The Court of Federal Claims ("Claims Court") held that (1) the government breached the implied duty of good faith and fair dealing in the 2007 agreement, (2) Dobyns was entitled to emotional distress damages from the breach, and (3) Dobyns was not entitled to relief under Rule 60 of the Rules of the Court of Federal Claims for alleged government misconduct. We reverse the Claims Court's judgment as to the breach of the implied duty and affirm its Rule 60 decision.

## BACKGROUND

The events leading up to the 2007 agreement began in 2003, when Dobyns, then an agent at the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), was engaged in undercover work for the investigation known as Operation Black Biscuit. During this investigation, Dobyns successfully infiltrated the Hells Angels Motorcycle Club and assisted in the indictment of 36 people for racketeering and murder charges. This led to numerous accolades for Dobyns' work, but the disclosure of his identity during the criminal prosecutions also led to threats of death and violence against Dobyns and his family.

ATF's alleged failure to appropriately respond to these security threats from 2004 to 2007, and to provide adequate support for concealing Dobyns' and his family's identity during an emergency relocation, led Dobyns to seek compensation from the government. In 2007, Dobyns and ATF settled their dispute. ATF agreed to pay Dobyns a lump-sum and to "comply with all laws regarding or otherwise affecting the Employee's employment by the Agency." J.A. 332–33. The parties also agreed that the 2007 agreement was integrated, "constitut[ing] the entire agreement by and between the parties." J.A. 333.

Neither the Claims Court nor Dobyns identifies any explicit threats that were made after the 2007 agreement. However, ATF, allegedly in violation of the agreement, withdrew Dobyns' and his family's fictitious identities, completing that process in May 2008. ATF determined that these fictitious identities were not required despite a 2007 threat assessment indicating that there were still concerns about threats against Dobyns and his family. In 2013, ATF's Internal Affairs Division ("IAD") released a report concluding that there had been no valid reason for the withdrawal of these fictitious identifies and that the safety risks to Dobyns and his family had been ignored.

Subsequently, in August 2008, an act of arson substantially damaged Dobyns' home, but his family was able to escape without injury. Following the arson, ATF, allegedly in violation of the agreement, delayed its initial response, persisted in pursuing Dobyns as a primary suspect, even after evidence established his innocence, and mishandled the manner in which information was disseminated to ATF supervisors. In 2012 IAD released a report concluding that the response to the arson at Dobyns' residence had been mismanaged, and ATF's Professional Review Board proposed that two of the employees responsible be removed from federal service.

The agency actions concerning the withdrawal of the identifications and the arson investigation were alleged to breach the 2007 agreement because they were in violation of internal agency "orders" and contrary to the 2007 agreement's implied duty of good faith and fair dealing.

Dobyns filed a complaint in the Claims Court on October 2008, alleging breach of the 2007 agreement. While the suit was pending in 2009 Dobyns' book, *No Angel: My Harrowing Undercover Journey to the Inner Circle of the Hells Angels*, was released to the public, and Dobyns thereafter made frequent media appearances to promote the book.

After a two week trial in 2013, the Claims Court held that there was no breach of any express provision of the 2007 agreement, but that there was a breach of the implied duty of good faith and fair dealing. This was based on the government's conduct discussed above, which the Claims Court determined violated an implied duty in the 2007 agreement to "ensure the safety of Agent Dobyns and his family" and, "secondarily, that ATF employees would not discriminate against Agent Dobyns." *Dobyns v. United States*, 118 Fed. Cl. 289, 319 (2014). The Claims Court went on to hold that, although Dobyns did not show economic damages arising from this breach, Dobyns was entitled to emotional distress damages. The Claims Court awarded damages in the amount of $173,000.

After the Claims Court had entered final judgment, and the government had filed its notice of appeal, the Claims Court sua sponte issued an order voiding its judgment based on concerns of potential government misconduct. The government moved to vacate the order because jurisdiction had already transferred to this court. The Claims Court vacated its order. Dobyns then "request[ed] that the [Claims] Court make an 'indicative ruling' pursuant to Rule 62.1 of its intention to alter, amend or void the judgment if vested with jurisdiction." J.A. 754. In his motion, Dobyns sought to "set aside the judgment entered August 28, 2014, based on [his] ability to prove that Department of Justice (DOJ) attorneys engaged in unethical conduct intended to prejudice plaintiff's rights." J.A. 754. Dobyns contended that "further trial court proceedings c[ould] determine if DOJ attorney misconduct prejudiced the [Claims] Court's factual findings or award, at which plaintiff can produce evidence of DOJ's misconduct." J.A. 758. Dobyns alleged incidents of misconduct known before judgment, including counsel's alleged attempts to improperly influence the agency's actions and witness testimony, and incidents that became known after judgment, involving alleged threats made against one of the

witnesses by another witness and defense counsel. The Claims Court issued an indicative ruling noting that it would investigate whether relief under Rule 60 would be appropriate based on the alleged misconduct. Pursuant to Rule 12.1 of the Federal Rules of Appellate Procedure, we remanded the case to the Claims Court to determine whether such relief was warranted but otherwise retained jurisdiction.

The Claims Court appointed a special master to "make findings assisting the assigned judge in determining whether" Rule 60 relief was appropriate. J.A. 261. After discovery and briefing, but without depositions, the special master determined that none of the alleged acts of misconduct warranted relief under Rule 60 because, even if they occurred, there was no showing that these acts could have affected Dobyns' case. The Claims Court adopted the special master's report and recommendation, going through each incident of alleged misconduct and finding that there was no showing that they affected Dobyns' ability to pursue his case and no showing that they affected the Claims Courts' judgment.

The government appealed the Claims Court's judgment as to the breach of the implied duty of good faith and fair dealing, and Dobyns cross-appealed the denial of Rule 60 relief. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I. Rule 60 Proceedings[1]

---

[1] The same standard that applies to Rule 60 of the Federal Rules of Civil Procedure applies to Rule 60 of the Rules of the Court of Federal Claims. *See Info. Sys. & Networks Corp. v. United States*, 994 F.2d 792, 794–97 & n.3 (Fed. Cir. 1993).

In his appeal from the denial of Rule 60 relief, Dobyns alleges incidents of misconduct that were known to the court before judgment was entered, including defense counsel's alleged attempted improper interference with agency actions and witness testimony, and also alleges incidents that came to light after judgement was entered, involving alleged witness intimidation by another witness and defense counsel.

A Rule 60 movant must provide a sufficient "reason to believe that vacating the judgment will not be an empty exercise or a futile gesture." *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995) (collecting cases). The fundamental problem with Dobyns' Rule 60 claim is that he does not actually seek to reopen the merits of the case via Rule 60 proceedings. Although Dobyns seems to have originally requested re-opening the merits in his motion for an indicative ruling to secure a larger damages award, his present position is that he does not want the judgment on the merits re-opened. "What we don't want the court to do, and what we ask that the court not do, is open up the entire proceeding and send it back down to the trial court . . . ." Oral Arg. at 42:17–42:26; *see* Cross-Appeal Open. Br. 99 (requesting remand for the Rule 60 proceedings "for the exclusive and limited purpose of allowing the completion of discovery, including depositions and an evidentiary hearing, regarding sanctions against the Justice Department"). Dobyns seeks to reopen the judgment only to seek sanctions and attorney's fees. But Rule 60(b) cannot be used to seek sanctions. "Rule 60(b) is available only to set aside a prior order or judgment; a court may not use Rule 60 to grant affirmative relief in addition to the relief contained in the prior order or judgment." James Wm. Moore, Moore's Federal Practice—Civil § 60.25 (3d ed. 2017); *see Delay v. Gordon*, 475 F.3d 1039, 1045–46 (9th Cir. 2007); *Adduono v. World Hockey Ass'n*, 824 F.2d 617, 620 (8th Cir. 1987); *United States v. $119,980*, 680 F.2d 106, 107 (11th Cir. 1982); Rule 60(b) ("On motion and just terms, the court

may relieve a party . . . from a final judgment, order, or proceeding . . . .").

At oral argument, counsel for Dobyns also admitted "[t]here was no request for sanctions made." Oral Arg. at 30:00–30:03; *see id.* at 29:39–29:46 ("Q. Did you make a motion for sanctions in the . . . Court of Federal Claims? A. Your Honor, we had not yet . . . .").[2] Nor does Dobyns argue it was error not to award sanctions. To the extent that Dobyns argues Rule 60 was a necessary predicate to receiving sanctions, that argument is incorrect.

Courts typically retain jurisdiction to rule on collateral issues, such as sanctions or attorney's fees, even after they lose jurisdiction over the merits decision. *See Willy v. Coastal Corp.*, 503 U.S. 131, 136–37 (1992); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990) ("[W]hether the attorney has abused the judicial process, and, if so, what sanction would be appropriate" is a collateral issue); *In re Hewlett-Packard Co.*, 50 F.3d 20 (table), 1995 WL 101334, at \*2 (Fed. Cir. Feb. 28, 1995) (unpublished).

Dobyns offers no reason why granting his Rule 60 motion would not be an empty exercise, and thus relief is not warranted here.

II. Breach of Implied Duty of Good Faith and Fair Dealing

The Claims Court's interpretation of a contract is a question of law reviewed de novo, and factual determinations are reviewed for clear error. *Scott Timber Co. v. United States*, 692 F.3d 1365, 1371 (Fed. Cir. 2012).

Every contract, including one with the federal government, imposes upon each party an implied duty of good

---

[2] Instead, Dobyns' sole theory with respect to sanctions was that they could not be imposed unless the judgment was first set aside under Rule 60. J.A. 289–91.

faith and fair dealing in its performance and enforcement. *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting Restatement (Second) of Contracts § 205 (1981)) ("*Metcalf*"). A party breaches the contract when it fails to abide by this implied duty, which includes "the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). But "[t]he implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010) ("*Precision Pine*"). Instead, "any breach of that duty has to be connected, though it is not limited, to the bargain struck in the contract." *Metcalf*, 742 F.3d at 994; *see id.* at 991 ("The implied duty of good faith and fair dealing is limited by the original bargain; it prevents a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value.").

To be sure, "a breach of the *implied* duty of good faith and fair dealing does not require a violation of an *express* provision in the contract." *Id.* (emphasis in original). But a specific promise must be undermined for the implied duty to be violated. For example, comment 1 to § 1-304 of the Uniform Commercial Code (U.C.C.) notes that the "section [on good faith] means that a failure to perform or enforce, in good faith, a *specific* duty or obligation under the contract, constitutes a breach." U.C.C. § 1-304 cmt. 1 (emphasis added). "[T]he UCC 'provides useful guidance in applying general contract principles.'" *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1351 (Fed. Cir. 2016) (quoting *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1066 (Fed. Cir. 2001)).

We have thus recognized that the duty must be "keyed to the obligations and opportunities established in the contract," so as to not fundamentally alter the parties' intended allocation of burdens and benefits associated with the contract. *Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341, 1349 (Fed. Cir. 2014); *see also* 2 E. Allan Farnsworth, Farnsworth on Contracts § 7.17 at 358 (3d ed. 2004) ("[T]he duty of good faith must be connected to a duty clearly imposed by the contract itself."); *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1326 (Fed. Cir. 1998) (noting that the "implied covenants of good faith and fair dealing are limited to assuring compliance with the express terms of the contract and can not be extended to create obligations not contemplated in the contract." (citing *Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026 (Cal. Ct. App. 1992))).

For example, in *Centex*, we held that the later imposition of tax liability on payments the government made pursuant to an agreement "interfere[d] with the plaintiffs' enjoyment of the benefits contemplated by the contract" (i.e., it undermined the reasonably anticipated value of the contracted-for government payments) and therefore constituted a breach of the implied duty. 395 F.3d at 1287–88, 1306. On the other hand, in *Precision Pine*, we held that interference with the plaintiff's ability to harvest timber did not breach the implied duty in part because the government "did not reappropriate any 'benefit' guaranteed by the contracts, since the contracts contained no guarantee" of uninterrupted performance. 596 F.3d at 828–29.

Here, the Claims Court concluded that "the essence of the Settlement Agreement was to ensure the safety of Agent Dobyns and his family—and, secondarily, that ATF employees would not discriminate against Agent Dobyns." *Dobyns*, 118 Fed. Cl. at 319. This was apparently based on parol evidence: testimony by Ronald Carter and Dobyns, which indicated that the "protection of Agent Dobyns is included with the expectation of Paragraph 10 of the

settlement agreement." *See, e.g.*, J.A. 10617. The Claims Court further concluded that these duties were violated by the government when it (1) "put[ ] Agent Dobyns at risk" by withdrawing his, and his family's, fictitious identities, (2) failed to adequately and appropriately investigate the arson at Dobyns' residence, and (3) failed to provide a systematic overhaul of ATF's procedures and processes to avoid recurrence of the ATF's pre-2007 security lapses relating to Dobyns. *Dobyns*, 118 Fed. Cl. at 319–21.

The flaw with the Claims Court's analysis is that the supposed duties (ensuring Dobyns' security and not discriminating against him) are not duties imposed by the language in the contract. Parol evidence by Carter and Dobyns cannot add additional provisions to the contract, particularly in light of the integration clause. Parol evidence cannot be used to "add to or otherwise modify the terms of a written agreement in instances where the written agreement has been adopted by the parties as an expression of their final understanding." *TEG-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338–39 (Fed. Cir. 2006) (quoting *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375 (Fed. Cir. 2004)); *see Barron Bancshares*, 366 F.3d at 1375 ("The rule thus renders inadmissible evidence introduced to modify, supplement, or interpret the terms of an integrated agreement.").[3] Without grounding the supposed duties in the specific provisions of the contract, the Claims Court imposed a vague duty of "ensur[ing] the safety of Agent Dobyns and his family" on the government

---

[3]    Although parol evidence may be useful to determine party expectations relating to particular contract provisions, it cannot be the source of an additional duty. *See, e.g.*, *Centex Corp.*, 395 F.3d at 1288 (looking to the government's representations to understand plaintiff's reasonable expectations relating to the anticipated benefit of contracted government payments).

as well as non-discrimination. *Dobyns*, 118 Fed. Cl. at 319. These obligations went well beyond those contemplated in the express contract and altered the contractual allocation of the burdens and benefits. *See Precision Pine*, 596 F.3d at 831.

It is true that the alleged grievances that led to the 2007 agreement were based on ATF's security failures relating to Dobyns' safety. But here, as we discuss below, there were no future promises regarding how the government would ensure the safety of Dobyns and his family, except the government agreed that "[s]hould any threat assessment indicate that the threat to the Employee and his family has increased from the assessment completed in June 2007, the Agency agrees to fully review the findings with the Employee and get input from the Employee if transfer is necessitated." J.A. 330. There is no claim here that this provision was undermined by the government's actions.

Inferring an implied duty based on the supposed purpose of the 2007 agreement, without a tether to the contract terms, would fundamentally alter the balance of risks and benefits associated with the 2007 agreement and cannot be the basis of a claim for breach of the implied duty of good faith and fair dealing. Because the Claims Court's judgment was not based on the government undermining any specific promise of the 2007 agreement, we conclude that the judgment for breach of the covenant of good faith and fair dealing cannot be sustained.

### III. Breach of Express Contract Terms

Dobyns also relies on an alternative theory that the government actions also constituted breach of express contract terms that obligated the government to comply with agency "orders." The agency orders at issue are not money mandating. Instead, the remedy for violations of these orders is generally limited to internal remedies (e.g., complaint to the Office of Inspector General). Dobyns claims he

is uniquely able to pursue a monetary remedy for violations of these orders because of the 2007 agreement. But judgment cannot be sustained on the alternative ground that there was an express breach of paragraph 10 of the 2007 agreement.

Paragraph 10 states:

10. This Agreement does not constitute an admission by the Agency or Employee of any violation of law, rule or regulation or any wrongful acts or omissions. The Agency <u>agrees that it will comply with all laws</u> regarding or otherwise affecting the Employee's employment by the Agency.

J.A. 332–33 (emphasis added). Dobyns argues that the term "all laws" includes particular internal ATF orders, covering a variety of topics including procedures for operational security as well as investigative protocols. *See Dobyns*, 118 Fed. Cl. at 314–15 & n.41. He argues that the purpose of the 2007 agreement and the ATF orders were violated by the same government conduct that was the basis of the Claims Court's holding as to the breach of the implied duty.

The Claims Court concluded that there was no breach of paragraph 10. It found that the earlier sentence in paragraph 10 demonstrates that "all laws" do not include the agency's rules, regulations, and orders. In paragraph 10, the 2007 agreement distinguishes between a "law, rule or regulation." Additionally, in paragraph 6, the 2007 agreement refers to "Agency practice and procedure." These distinct uses of the terms law, rule, regulation, agency practice and procedure in the 2007 agreement indicate that the parties assigned different meanings to these terms. The Claims Court also determined that Dobyns' claim that paragraph 10 included more than a dozen ATF orders was belied by the requirement that "language used in a contract to incorporate extrinsic material by reference must explicitly, or at least precisely, identify the written material

being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract." *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1345 (Fed. Cir. 2008). We agree with the Claims Court's conclusion that the express language of the 2007 agreement does not admit of Dobyns' construction of "all laws." Although it is possible that in certain circumstances "all laws" could include agency regulations and guidelines, here the contract is clear on its face that it does not include ATF regulations and orders.

Dobyns' response is twofold. First, he relies on witness testimony that allegedly equated ATF orders with "all laws." One of the ATF negotiators of the 2007 agreement (Carter) gave contradictory testimony in this respect. For example, Carter responded to the question "if there was an ATF order that governed how ATF investigated threats against its employees, would that be included within the Agreement," with "Yeah, I would say so." J.A. 10486. But Carter also testified that he did not "see laws and ATF orders being the same thing. . . . ATF orders aren't laws." J.A. 10468.

Dobyns also relies on the understanding of other agency employees who equated ATF orders with laws. *See, e.g.*, J.A. 15083 ("Q. Okay. But are ATF orders essentially for operating purposes of ATF the laws of the Agency? A. Yes."); J.A. 11362 ("Q. And in your experience at ATF, are ATF orders the laws of the agency? A. Yes, sir."); J.A. 12732–73 ("Q. What do ATF orders mean to you as you understand them in the carrying out of your daily duties? A. . . . [T]hey are the law of the land at ATF.").

In light of the contract's language, and in light of the authority discussed above, Dobyns cannot rely on parol evidence to vary the terms of the agreement.

Second, Dobyns relies on the government's response to Requests for Admission as admitting that the contract

incorporated additional regulations. For example, Request for Admission No. 12 and the government's response stated:

> **Request No. 12.** Admit that, with respect to Paragraph Ten of the [2007] Settlement Agreement, ATF had an obligation to protect the physical safety of Plaintiff during his period of his employment with ATF.
>
> **Response.** Admits to the extent that the obligation identified in the request, pursuant to the language of paragraph 10, is established by statute, regulation, or ATF Order. Paragraph 10 of the Settlement Agreement provides, in relevant part, that "[t]he Agency agrees that it will comply with all laws regarding or otherwise affecting the Employee's employment with the Agency." ATF Order 3040.1A and ATF Order 3040.2A, in turn, provide the agency's guidelines and procedures for the reporting, investigating, evaluating, and handling of threats that could potentially impact the physical safety of Mr. Dobyns during his employment with ATF. Except as expressly admitted, the request is denied.

J.A. 1992–93.[4]

---

[4]     Dobyns also relies on the government's response to Request No. 5:

> **Request No. 5**. Admit that ATF has an obligation to protect the physical safety of ATF agents during their period of employment with ATF from external threats of violence and intimidation.
>
> **Response**. Admits to the extent that the obligation referred to in the request arises from statute,

Although the government's responses are badly drafted, at the end of the day they do not support Dobyns' argument. The admissions do not say that the government agreed ATF orders were to be included under the "all laws" language. Instead, they merely note that "to the extent" paragraph 10 were interpreted to cover more than statutory laws, the specific orders cited in the response provided the "agency's guidelines and procedures for reporting, investigating, evaluating, and handling of threats that could potentially impact the physical safety of Mr. Dobyns during his employment with ATF."

## CONCLUSION

We reverse the Claims Court's judgment on liability and affirm the Claims Court's rejection of Dobyns' motion for relief under Rule 60.

**AFFIRMED-IN-PART AND REVERSED-IN-PART**

## COSTS

No costs.

---

regulation, or ATF Order. ATF Order 3040.1A and ATF Order 3040.2A provide the agency's guidelines and procedures for reporting, investigating, evaluating, and handling external threats of violence and intimidation made against agents or the family members of agents. Except as expressly admitted, the request is denied.

J.A. 1989–90. Although the government admitted the obligation to comply with ATF orders, this response does not refer to obligations arising from the 2007 agreement.