NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PATRICE MOCZEK, PARENT AND NATURAL GUARDIAN OF K. H., HER DAUGHTER, A MINOR,**
*Petitioners-Appellants*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2018-2341

---

Appeal from the United States Court of Federal Claims in No. 1:16-vv-00930-EGB, Senior Judge Eric G. Bruggink.

---

Decided: June 5, 2019

---

JAMES B. BLUMENSTIEL, Powell, OH, argued for petitioners-appellants.

ROBERT PAUL COLEMAN, III, Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JOSEPH H. HUNT, ALEXIS B. BABCOCK, CATHARINE E. REEVES.

---

Before LOURIE, DYK, and O'MALLEY, *Circuit Judges.*

DYK, *Circuit Judge.*

The petitioner, Patrice Moczek, filed a claim on behalf of her daughter, K.H., under the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. §§ 300aa-1 through -34 (2012), in the United States Court of Federal Claims ("Claims Court"). The special master dismissed the petition for "failure to prosecute" and "insufficient evidence" and later denied the petitioner's Rule 60(b) motion seeking reconsideration. We *reverse* and *remand.*

BACKGROUND

On August 3, 2016, the petitioner, represented by counsel, filed a petition on behalf of her daughter, K.H., seeking compensation for an alleged vaccine-related injury, which allegedly caused leg pain, headaches, fatigue, and other symptoms. The petitioner claimed that her daughter's symptoms were caused by three vaccines, including the Gardasil® vaccine for human papillomavirus ("HPV"). Over the months that followed, the petitioner submitted K.H.'s medical records and reports from two experts: Dr. Phillip DeMio (one of K.H.'s treating physicians) and James Lyons-Weiler, Ph.D (a biologist). Both experts concluded that K.H.'s injuries had likely been caused by a reaction to the Gardasil® vaccine. In response, the government filed a report pursuant to Rule 4(c) of the Vaccine Rules for the Court of Federal Claims ("Vaccine Rule 4(c) Report").[1]

---

[1]    Rule 4(c) of the Vaccine Rules for the Court of Federal Claims ("Vaccine Rule 4(c)") requires the respondent to "file a report setting forth a full and complete statement of its position as to why an award should or should not be

The government's report detailed K.H.'s medical history both before and after she was vaccinated and highlighted that K.H. had pre-existing medical issues and that many of K.H.'s doctors believed that K.H.'s symptoms following vaccination may have been the result of somatization (i.e., the generation of physical symptoms in response to a psychiatric condition such as anxiety). The government also argued that the petitioner's causation theory was unpersuasive. The government did not submit any expert reports.

The special master then held a conference at which he ordered the petitioner to file a status report indicating whether she would file an additional expert report to cure any deficiencies identified in the Vaccine Rule 4(c) Report. The petitioner indicated that she had retained an immunologist and would file an additional expert report. The special master ordered that the report be filed by September 8, 2017. On September 12, the petitioner had not yet filed a supplemental report, and the special master issued an order requiring the petitioner to file the report immediately. When the petitioner still had not filed the report by September 19, the special master issued an order to show cause why petitioner's case should not be dismissed for failure to prosecute. Again, the petitioner failed to respond, and on September 29, 2017, the special master dismissed the petitioner's case for "failure to prosecute" and "insufficient evidence." J.A. 6.

On November 18, 2017, the petitioner filed a motion requesting reconsideration of the special master's dismissal.

---

granted." Such a report "must contain respondent's medical analysis of petitioner's claims and must present any legal arguments that respondent may have in opposition to the petition. General denials are not sufficient." Vaccine Rule 4(c)(2).

The special master ruled that the motion for reconsideration was untimely and advised that she refile the motion as a Rule 60(b) motion requesting relief from judgment. Were the petitioner to do so, the special master indicated that her motion "could be treated as having been made in a timely fashion." J.A. 8. The petitioner subsequently filed a Rule 60(b) motion. She argued that she was delayed in responding to the special master's orders because she had difficulty reaching the immunology expert whose report she had been ordered to file and because her counsel did not receive electronic notice of the court's orders.

The special master denied the petitioner's Rule 60(b) motion on February 16, 2018. In denying the petitioner's motion, the special master concluded that the merits of the petitioner's case were "not legally tenable" and therefore that "granting relief from the judgment dismissing Petitioner's claim would likely be a futile exercise." J.A. 17–18. The special master also found that negligent conduct of petitioner's counsel was not "excusable." The Claims Court affirmed the special master's denial, and the petitioner appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Rule 60(b)(1) of the Rules of the Court of Federal Claims ("Rule 60(b)(1)") permits the Claims Court to reopen judgment for "mistake, inadvertence, surprise, or excusable neglect." "We review an appeal from the [Claims Court] in a Vaccine Act case de novo, applying the same standard of review that court applied in reviewing the special master's decision." *Milik v. Sec'y of Health & Human Servs.*, 822 F.3d 1367, 1375 (Fed. Cir. 2016). We set aside the special master's fact findings only if they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 42 U.S.C. § 300aa-12(e)(2)(B); *Milik*, 822 F.3d at 1376.

The Supreme Court in *Pioneer Investment Services Co. v. Brunswick Ltd. Partnership*, 507 U.S. 380, 395 (1993),

set out four factors that a court should consider in determining "excusable neglect": "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."[2] Nevertheless, the Court recognized that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.*

We recognize the importance of a special master's ability to set a schedule and to enforce a petitioner's adherence to that schedule. Here, there is no doubt that petitioner's counsel was negligent when he failed to timely respond to the special master's orders, or at least to explain why compliance was not possible or should be excused.[3] There were, in other words, no good reasons for the delay, a factor which outside the Vaccine Act context has often been held to be fatal to Rule 60(b) relief. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure § 2858 (3d ed. 2010 & Supp. 2019). Nonetheless, we find that dismissal of the petitioner's case here, as opposed to some lesser sanction, and the special master's refusal to grant Rule 60(b) relief, was an abuse of discretion in the circumstances of this case. Several factors support our conclusion.

---

[2] Although *Pioneer* dealt with Rule 60 of the Federal Rules of Civil Procedure, the same standard applies to Rule 60 of the Rules of the Court of Federal Claims. *Dobyns v. United States*, 915 F.3d 733, 737 n.1 (Fed. Cir. 2019).

[3] Even if counsel did not receive email notification of the orders, he had an obligation to monitor the docket, and his inability to reach the planned expert did not explain his failure to respond to the special master's orders.

Initially, we note that summary dismissal of a Vaccine Act case for failure to prosecute in routine cases runs counter to the core purposes of the Vaccine Act. When the Vaccine Act was passed, Congress expressed a concern that the increased numbers of children purportedly injured by vaccines were resorting "to the tort system for some form of financial relief." H.R. Rep. No. 99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. Congress explained that it was concerned that abundant reliance on the tort system would increase costs on both claimants and vaccine manufacturers, and, in turn, could jeopardize the country's supply of vaccines by making it more difficult for vaccine manufacturers to obtain liability insurance and remain in the vaccine business. *Id.* at 6–7, 1986 U.S.C.C.A.N. at 6347–48.

This concern is reflected in the language of the Vaccine Act, which requires that a claimant first seek recovery in the Claims Court before filing a civil tort action. 42 U.S.C. § 300aa-11(a)(2)(A). Summary dismissal of potentially meritorious vaccine claims for failure to prosecute would thus only serve to undermine one of the overriding concerns that prompted Congress to pass the Vaccine Act in the first place, as it would redivert vaccine-related injury claims back to state and federal courts for litigation as tort claims. The Vaccine Act, moreover, establishes "a federal 'compensation program' under which awards are to be 'made to vaccine-injured persons quickly, easily, and with certainty and generosity.'" *Knudsen by Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 549 (Fed. Cir. 1994) (quoting H.R. Rep. No. 99-908, at 3, 1986 U.S.C.C.A.N. at 6344). Nonetheless, summary dismissal for failure to prosecute will be appropriate in exceptional cases. But for the reasons discussed below, this is not such an exceptional case.

Multiple considerations (demonstrating that this is not an exceptional case) counsel against dismissal here. First, the petitioner's failure to respond to the special master's

orders only delayed proceedings for a short period (a little over two months). Second, there has been no showing of prejudice by the government resulting from the delay. Third, there is no claim that the petitioner acted in bad faith. Fourth, counsel's negligence is not likely to be repeated since petitioner's counsel has represented that he would withdraw from the case if the Rule 60(b) motion is granted.

Finally, the special master's conclusion that the petitioner's claim was "not legally tenable" appears to have been the primary reason for the denial of Rule 60(b)(1) relief. This determination is akin to a determination that the petitioner's complaint could not have survived summary judgment. We disagree.

The petitioner was the only party to submit expert testimony in this case. And all three of the petitioner's experts testified in support of the theory that the Gardasil® vaccine likely caused K.H.'s health problems. Dr. DeMio (one of K.H.'s treating physicians) testified to "a high degree of medical certainty" that K.H.'s "severe medical problems were caused by the . . . vaccines that she received on or about August 15, 2013." J.A. 51–52. Dr. Lyons-Weiler (a biologist) testified, based on a review of scientific literature, that K.H.'s "symptoms, which appeared after administration of Gard[a]sil® Quadrivalent vaccine on the same day as administration of [two other vaccines] are consistent with a growing number of serious, if sometimes difficult to diagnose adverse events reported after HPV vaccination." J.A. 76. And Dr. Miller (the immunologist retained pursuant to the special master's order) testified that K.H.'s symptoms were "more likely than not . . . a post-Gard[a]sil event." J.A. 137.

Moreover, K.H.'s medical records do not contradict a finding that K.H.'s injuries were caused by the Gardasil® vaccine. Though these records reveal that K.H. suffered some medical issues before being vaccinated and that some

of these problems manifested in symptoms similar to those she suffered after vaccination, it is, at minimum, clear that the medical records showed that the severity of these symptoms was far greater after K.H. received the Gardasil® vaccine. Before the vaccinations, K.H. was a successful student. After receiving the Gardasil® vaccine she was in so much pain that she was no longer able to attend school. Although the petitioner's expert testimony and other evidence in support of her vaccine claim may ultimately prove to be insufficient, it is not facially "insufficient."

This case is similar to *M.D. by and through Doe v. Newport-Mesa Unified School District*, 840 F.3d 640 (9th Cir. 2016) (per curiam). In *Newport-Mesa*, the Ninth Circuit found that the district court had abused its discretion in denying the plaintiffs' request for relief from judgment under Rule 60(b)(1) based on excusable neglect. *Id.* at 642–43. In reaching this decision, the court of appeals explained that three of the four *Pioneer* factors supported granting relief: the delay was short and the impact of the delay on the proceedings was minimal, the defendants had not been prejudiced by the plaintiffs' delay, and there was no evidence of bad faith. *Id.* at 643. The district court had concluded that the plaintiffs' reason for the delay did not support a finding of excusable neglect, but the Ninth Circuit concluded that that could not alone justify a denial of relief where three other factors favored granting it because "counsel's neglect [was not] so egregious that it outweigh[ed] the remaining three factors." *Id.*

## CONCLUSION

For the foregoing reasons, we hold that the special master abused his discretion in reaching what the special master himself recognized was "a harsh result," J.A. 23—dismissing the petitioner's complaint and subsequently denying the petitioner's Rule 60(b) motion. We *reverse* and *remand*.

**REVERSED AND REMANDED**

Costs

No costs.