ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Inland Service Corporation, LLC | ) | ASBCA No. 63770 |
| | ) | |
| Under Contract No. W91151-21-D-0006 | ) | |

APPEARANCES FOR THE APPELLANT:   Johnathan M. Bailey, Esq.
                                 Kristin E. Zachman, Esq.
                                  Cokinos-Young
                                  San Antonio, TX

APPEARANCES FOR THE GOVERNMENT:   Dana J. Chase, Esq.
                                   Army Chief Trial Attorney
                                  CPT Sana H. Daniell, JA
                                   Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE LAUFGRABEN
ON THE GOVERNMENT'S SUMMARY JUDGMENT MOTION

Under a requirements contract, the government places orders for goods and services as needs arise; the order—not the base contract—specifies when the goods must be delivered or the service must be completed. That contract structure governs this appeal. Appellant, Inland Service Corporation, LLC (Inland), holds a requirements contract with the United States Army for solid-waste management services at Fort Hood, Texas.[1] The Army issued an order under that base contract directing Inland to construct a new landfill cell within 365 days. Inland balked: the base contract, it argued, said nothing about a deadline, so the Army could not require completion in 365 days. Inland also contends that the Army failed to disclose its superior knowledge regarding the completion period at the solicitation phase.

The Army moves for summary judgment. It contends that the base contract allowed the Army to establish the completion period in the order, and that the chosen period was consistent with that contract. The Army also contends that Inland's superior knowledge claim fails because nothing in the solicitation misled Inland about

---

[1] Fort Hood was renamed Fort Cavazos on May 9, 2023, and restored to Fort Hood on July 8, 2025. *See* Hood renamed to honor an 'original Phantom Warrior,' *available at* https://www.army.mil/article/287396/hood_renamed_to_honor_an_original_ph antom_warrior (last visited May 12, 2026). For simplicity we refer to the base as Fort Hood regardless of date.

the completion period, or failed to put Inland on notice to inquire about it—an essential element of Inland's claim.

As explained below, the base contract grants the Army discretion to establish the completion period in the order; however, the Army must exercise that discretion in a reasonable way. Inland contends that the Army has not done so. Although Inland raises this point in the context of a constructive or cardinal change claim, its challenge to the completion period is substantively a claim for breach of the implied duty of good faith and fair dealing. Because Inland has produced sufficient evidence to show a genuine issue of material fact about whether the Army met that duty, we deny summary judgment on Inland's challenge to the completion period. However, we grant the Army's motion on the superior knowledge claim. Nothing in the solicitation was misleading about the completion period or failed to put Inland on notice to inquire about it.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

**The Base Contract**

On May 19, 2021, the Army awarded Contract No. W91151-21-D-0006 (Base Contract) to Inland for waste management services at Fort Hood, Texas, effective June 1, 2021 (R4, tab 30 at 793-802).[2]

The Base Contract listed 13 Contract Line Item Numbers (CLINs) for waste management services (*id.* at 795-802). The CLINs generally fall into two categories. Some require ongoing services, which are measured in months. For instance, CLIN 0001 calls for Refuse Collection over a 59-month period, and CLIN 0002 calls for Landfill Operations over a 59-month period (*id.* at 795-96). Others require construction or closure of landfill cells, which are measured in physical units: CLIN 0007 calls for closing 696,960 square feet of a designated waste cell; CLIN 0009 calls for constructing 174,240 square feet of a landfill cell; and CLIN 0011 calls for constructing up to 958,320 square feet of a landfill cell (*id.* at 798-800). These landfill CLINs specify no completion period (*see id.*).

The Base Contract states that it is "a requirements contract" (R4, tab 30 at 816-17). A requirements contract obligates the government to "fill[] all actual purchase requirements of designated Government activities for supplies or services during a specified contract period (from one contractor), with deliveries or performance to be scheduled by placing orders with the contractor." FAR 16.503(a), REQUIREMENTS CONTRACT. Consistent with that structure, the Base Contract

---

[2] All references to specific page numbers are to the Bates-labeled pagination. Any prefixes and leading zeros have been removed.

authorizes performance "only as authorized by orders issued in accordance with the Ordering clause," and obligates Inland to furnish all services "called for by orders issued in accordance with the Ordering clause" (R4, tab 30 at 816-17).

The Ordering Clause, FAR 52.216-18, ORDERING (AUG 2020), provides that "[a]ny supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from 1 June 2021 to 31 May 2026" (*id.* at 815). The FAR further specifies that each task order must include the "[d]elivery or performance schedule"—which we refer to in this decision as the "completion period." FAR 16.505(a)(7)(iv). Under this structure, the Base Contract defines the CLIN work scope, but the task order specifies the completion period.

The Base Contract places several express constraints on the government's discretion to set task order terms. First, task orders are "subject to the terms and conditions of this [Base Contract]" (R4, tab 30 at 815). Second, if a conflict arises between the Base Contract and a task order, the Base Contract controls (*id.*). Third, the Base Contract permits Inland to reject orders that fall into one of the following categories: (1) an order for supplies or services in an amount less than $100,000; (2) an order for a single item in excess of $8 million; (3) an order for a combination of items in excess of $10 million; or (4) a series of orders from the same ordering office within 30 days that call for quantities exceeding the first or second limits (*id.*). The Base Contract did not place any constraints on the landfill CLIN completion periods.

The Base Contract also addresses orders issued near the end of the Base Contract's effective period—*i.e.*, May 31, 2026—by providing that any order issued during that period and "not completed within that period shall be completed by the Contractor within the time specified in the order" (*id.* at 817). That provision, like FAR 16.505(a)(7)(iv), looks to the task order itself as the source of the applicable completion period.

**The Task Order**

On April 29, 2022, the Army Contracting Officer issued a task order for CLIN 0011, directing Inland to construct a 22-acre landfill cell for a firm fixed price of $4,925,764.80 (R4, tab 34, at 832-34) (Task Order). The Task Order set a 336-day completion period, from April 29, 2022, to March 31, 2023 (*id.* at 834).

Inland acknowledged receipt of the Task Order the same day and requested "a few days to review and work on the logistics" (app. supp. R4, tab 2). Four days later, on May 3, 2022, Inland returned a signed copy of the Task Order (app. supp. R4, tab 3). Although the signed Task Order required completion in 336 days, Inland's return email stated that it estimated 600 days to complete CLIN 0011 (*id.*). That same day, Inland

3

provided the Army with a project schedule showing 623 days for completion (app. supp. R4, tab 6 at 2).

Although the Army declined to adopt Inland's proposed 623-day completion period, the Army confirmed on May 11, 2022 that it would extend the completion period by 29 days—from 336 to 365 days—establishing a revised deadline of April 29, 2023 (app. supp. R4, tab 7). The parties modified the Task Order accordingly (R4, tab 58 at 903).[3] Inland completed the work within the completion period and submitted its final invoice on June 2, 2023 (R4, tab 73 at 942; R4, tab 76 at 1125).

**Inland Submits A Claim For Additional Costs**

Inland submitted a request for equitable adjustment (REA) to the Army on July 26, 2023, asserting that the Base Contract did not require it to complete CLIN 0011 in 365 days, so the Army could not impose that requirement in the Task Order without paying additional compensation (R4, tab 73 at 972-77). Inland also alleged that the Army failed to disclose superior knowledge about the completion period (*id*. at 978-79). The Army did not respond to the REA (R4, tab 74 at 1122).

On October 9, 2023, Inland converted its REA into a Contract Disputes Act (CDA) claim (*id*.; R4, tab 75). The Army denied the claim in a final decision, dated November 27, 2023 (R4, tab 74 at 1122; R4, tab 76 at 1126). Inland appealed on November 30, 2023, and the Board docketed the appeal as ASBCA No. 63770 on December 4, 2023.

Inland filed a complaint on January 4, 2024. The complaint reasserts that the Base Contract did not require completion of CLIN 0011 within 365 days, so the Army could not impose that requirement in the Task Order (compl. ¶¶ 67-69). The complaint also asserts a superior knowledge theory, alleging that the Army failed to disclose its intent to require CLIN 0011 completion within 365 days (*id*. ¶¶ 70-74).

DECISION

We deny the Army's summary judgment motion as to Inland's challenge to the 365-day CLIN 0011 completion period and grant the motion as to the superior knowledge claim. The Base Contract specified no CLIN 0011 completion period, thereby providing the Army with discretion to establish it in a task order. The Army's discretion, however, is subject to the implied duty of good faith and fair dealing, and Inland has presented sufficient evidence to raise a genuine issue of material fact about whether the Army met that duty in establishing a 365-day completion period.

---

[3] The parties subsequently agreed to another one-month extension to May 31, 2023, due to weather-related delays (R4, tab 72 at 940).

But Inland's superior knowledge claim does not survive the Army's motion. The undisputed facts show that nothing in the solicitation misled Inland about the CLIN 0011 completion period or failed to put Inland on notice to inquire about it.

## I. Standard of Review

When deciding a summary judgment motion, the Board looks to Rule 56 of the Federal Rules of Civil Procedure for guidance. Board Rule 7(c)(2). Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A fact is material if it may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The movant bears the burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322. Such facts must be viewed in the light most favorable to the non-moving party. *Liberty Lobby*, 477 U.S. at 255. The non-movant must set forth specific facts demonstrating the existence of a genuine issue of material fact; mere conclusory statements and bare assertions are inadequate. *Mingus*, 812 F.2d at 1390-91. The Board's responsibility at this stage is not "'to weigh the evidence and determine the truth of the matter,' but rather to ascertain whether material facts are disputed and whether there exists any genuine issue for trial." *Holmes & Narver Constructors, Inc*., ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Liberty Lobby*, 477 U.S. at 249).

## II. Inland's Challenge To The CLIN 0011 Completion Period Is Best Understood As A Claim For Breach Of The Implied Duty Of Good Faith And Fair Dealing; Genuine Issues Of Material Fact Preclude Summary Judgment On That Claim

Inland frames its challenge to the CLIN 0011 completion period as a claim for constructive or cardinal change under the following logic: because the Base Contract does not specify the CLIN 0011 completion period, the Base Contract is ambiguous about that period and we must consider extrinsic evidence to determine the parties' intent (app. resp. at 31-32). In Inland's view, the absence of the CLIN 0011 completion period in the Base Contract may be interpreted in two ways: that (1) the parties intended for the government to defer Inland's assessment of a "reasonable, realistic, cost-effective period of performance" (*id*. at 19); or (2) the parties intended that the Army would select a reasonable period (*id*. at 31-32). Either way, Inland argues, the intended completion period under the Base Contract was longer than 365 days, and by imposing that period, the Army changed the terms of the contract.

5

But the Base Contract's silence regarding the CLIN 0011 completion period is not an ambiguity. "An ambiguity exists when there are two reasonable interpretations of the language under consideration." *Classic Site Sols., Inc.*, ASBCA Nos. 58376, 58573, 14-1 BCA ¶ 35,647 at 174,551 (quoting *Teg-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006)). "To show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term . . . Rather, both interpretations must fall within a 'zone of reasonableness.'" *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999).

Inland has not identified two reasonable interpretations of the Base Contract's silence about the CLIN 0011 completion period. Inland's first interpretation is unreasonable because nothing in the Base Contract required the Army to defer to Inland's internal pricing assessment, negotiate the completion period, or otherwise surrender control over that period to Inland. The interpretation also conflicts with the Base Contract, which grants the Army control over the ordering process, and FAR 16.505(a)(7)(iv), which requires the Army to specify the completion period in the task order (R4, tab 30 at 815-16).

Inland's second interpretation points in the right direction, but it repackages the implied duty of good faith and fair dealing—an existing constraint on Army discretion—as a freestanding "reasonableness" requirement. The implied duty of good faith and fair dealing requires the Army to exercise its discretion reasonably.[4] Thus, Inland's "reasonableness" argument is not a competing interpretation of the Base Contract; it is simply a restatement of an existing legal obligation, which cannot generate a contract ambiguity. Because Inland's argument that the Army must choose a reasonable completion period fits more naturally with the implied duty of good faith

---

[4] Although Inland has not made the argument, we recognize that "[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Rest. (Second) Contracts § 204. Indeed, this principle may apply if "a contract calls for a single performance such as the rendering of a service or the delivery of goods," but no time is specified. *Id.* cmt. d. But this rule does not apply here. The parties did not neglect to include the CLIN 0011 completion period (or any other CLIN completion period) in the Base Contract; rather, the Base Contract grants the Army discretion to establish that period in the task order. The controlling constraints on that discretion are the express contractual limitations and the implied duty of good faith and fair dealing, not section 204.

and fair dealing framework, we analyze it under that framework.[5] As demonstrated below, Inland has produced enough evidence to survive summary judgment on a claim for breach of the implied duty of good faith and fair dealing.

The implied duty of good faith and fair dealing obligates each party "not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)). The duty must be "keyed to the obligations and opportunities established in the contract," to ensure that it does not alter the parties' intended bargain. *Id.* (quoting *Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341, 1349 (Fed. Cir. 2014)).

Here, Inland has presented sufficient evidence that, when construed in the light most favorable to Inland, supports a claim that the 365-day completion period breached the implied duty of good faith and fair dealing. Inland's expectations are tied to the Base Contract's firm-fixed-price structure (*see* app. resp. at 29). Under that structure, Inland was responsible for its means and methods of performance, and could price the work accordingly. *See* FAR 16.201-2; *Shuey Aircraft, Inc. v. United States*, 3 Cl. Ct. 243, 245 (1983) (contractor is responsible for its means and methods). Inland expected to self-perform certain work and to work in one area at a time (R4, tab 73 at 979-80). But to meet the Army's 365-day completion period, Inland needed to divide the construction area into two sub-areas with separate working crews operating concurrently and hire a subcontractor—at an increased cost for which Inland now seeks compensation (*id.*; app. resp. at 25). Whether Inland's specific expectations are reasonable given the terms of the Base Contract, and whether the 365-day completion period destroyed those expectations, are genuine issues of material fact that we cannot resolve on summary judgment.

---

[5] Inland has not presented a certified claim based on a breach of the implied duty of good faith and fair dealing, but we still have jurisdiction because the claim is related to Inland's change claim. *See K-Con Bld. Sys., Inc. v. United States*, 778 F.3d 1000, 1005-06 (Fed. Cir. 2015) (claims are separate from one another when they assert grounds that are materially different from each other factually or legally). Both the change claim and the implied duty of good faith and fair dealing claim assert that in establishing a 365-day completion period, the Army did not reasonably exercise its discretion. The claims are also related in that they require us to address the same evidence. *See Red Bobtail Trans*, ASBCA Nos. 63783, 63784 24-1 BCA ¶ 38,598 at 187,639-40 (matters may be related when the same or related evidence will determine the outcome).

Although the Army acknowledges that its discretion is subject to the implied duty of good faith and fair dealing, the Army asserts that the 365-day completion period complied with that requirement because completing the work within that period was neither impossible nor impracticable (gov't reply br. at 25-26). But Inland need not show that the 365-day completion period was impossible or impracticable to prove a breach of the implied duty of good faith and fair dealing. Rather, the question is whether the Army destroyed Inland's reasonable expectations regarding the fruits of the contract by establishing that completion period.

Accordingly, summary judgment is denied on Inland's challenge to the 365-day completion period.

## III. Inland Cannot Show That The Army Is Liable For Failing To Disclose Its Alleged Superior Knowledge About The CLIN 0011 Completion Period

Inland also contends that the Army is liable for increased costs under a superior knowledge theory (compl. ¶¶ 70-74). To support this theory, Inland must demonstrate four elements: "(1) a contractor undertakes to perform without vital knowledge of a fact that affects performance costs or duration, (2) the government was aware the contractor had no knowledge of and no reason to obtain such information, (3) any contract specification supplied misled the contractor or did not put it on notice to inquire, and (4) the government failed to provide the relevant information." *Meltech Corp.*, ASBCA No. 63556, 25-1 BCA ¶ 38,720 at 188,262 (quoting *Scott Timber Co. v. United States*, 692 F.3d 1365, 1373 (Fed. Cir. 2012)). "Summary judgment for the government is appropriate if undisputed facts show that at least one of the four elements is not present[.]" *H&L Contracting LLC*, ASBCA No. 63695, 25-1 BCA ¶ 38,715 at 188,241.

Here, even drawing all inferences in Inland's favor, no reasonable fact-finder could determine that the specifications misled Inland about the CLIN 0011 completion period or failed to put Inland on notice to inquire about it. First, Inland contends that it was unaware that the Army intended to require a 365-day period at the solicitation phase (app. resp. at 19). But the solicitation did not specify any completion period. The solicitation reserved to the Army the authority to establish completion periods in task orders, and said nothing to suggest that authority had been relinquished (R4, tab 3 at 127; *see also* FAR 16.505(a)(7)(iv)). Thus, Inland cannot show that the specifications were misleading on the CLIN 0011 completion period or failed to put Inland on notice to inquire about it.

Next, Inland emphasizes that "there was not a *single* indication anywhere in the Solicitation that the period of performance for CLIN 0011 would be limited to 365 days," and asserts that "all indications were to the contrary" (app. resp. at 19 (emphasis in original)). But Inland has identified no indication "to the contrary."

Nothing in the solicitation suggested that the Army would defer to Inland's internal assessment of a "reasonable, realistic, and cost-effective" completion period, rather than establish that period based on Army needs.

Inland also argues that the Army could have disclosed CLIN-specific completion periods in response to a bidder's question about when a cell would be filled (*id.* at 18-19). But the bidder asked when construction of the new cell was expected to begin, and not how long the awardee would have to complete the work. Nothing in the Army's answer suggested any particular completion period or indicated that the Army would defer to the contractor's internal pricing assumptions in establishing that period (R4, tab 13 at 439).

Finally, Inland asserts that the Base Contract suggested that CLIN 0011 would not be constrained by any fiscal-year funding limitation in that it incorporated DFARS 252.232-7007, LIMITATION OF GOVERNMENT'S OBLIGATION (APR 2014) (app. resp. at 18-19). That provision requires the government to identify CLINs that are incrementally funded and specify the amount of the total price presently available for payment. DFARS 252.232-7007(a). Because the solicitation identified no CLIN subject to this provision, Inland states that "the only reasonable conclusion [is] that no CLIN would be incrementally funded or otherwise had any kind of funding limitations" (app. resp. at 19).

But DFARS 252.232-7007 concerns the amount of funds obligated at a given time, not the completion period required by a task order. No reasonable factfinder could conclude that it misled Inland about the CLIN 0011 completion period or failed to put Inland on notice to inquire about it.

Finally, additional discovery would not change this result. Inland proposes multiple topics for discovery, including the Army's intent to require completion in 365 days, solicitation development, and proposal evaluation (Bailey decl. ¶¶ 7-10). But additional discovery into these topics would not affect the outcome because none touch on the dispositive issue: whether the Base Contract was misleading about the CLIN 0011 completion period or failed to put Inland on notice to inquire about it.

Accordingly, we grant the Army's summary judgment motion on the superior knowledge claim.

<u>CONCLUSION</u>

For these reasons, we deny the Army's summary judgment motion as to Inland's challenge to the 365-day completion period, and grant the motion as to the superior knowledge claim. Within 21 days of this decision, the parties shall submit a proposed schedule for further proceedings.

Dated: May 21, 2026

ERIC E. LAUFGRABEN
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

DAVID D'ALESSANDRIS
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

10

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63770, Appeal of Inland Service Corporation, rendered in conformance with the Board's Charter.

Dated: May 21, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals