ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Watts Constructors, LLC | )      ASBCA Nos. 61518, 61961 |
| | ) |
| Under Contract No. W9128F-14-C-0024 | ) |

APPEARANCES FOR THE APPELLANT:      Sara Beiro Farabow, Esq.
                                                      David A. Blake, Esq.
                                                      Michael E. Wagner, Jr., Esq.
                                                         Seyfarth Shaw LLP
                                                         Washington, DC

APPEARANCES FOR THE GOVERNMENT:      Michael P. Goodman, Esq.
                                                       Engineer Chief Trial Attorney
                                                      Erin K. Murphy, Esq.
                                                      Stanley E. Tracey, Esq.
                                                      Engineer Trial Attorneys
                                                      U.S. Army Engineers District, Omaha

## OPINION BY ADMINISTRATIVE JUDGE MELNICK
## ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT[1]

In ASBCA No. 61518, Watts Constructors, LLC (Watts), has appealed from the government's termination for default of a construction contract at Fort Carson, Colorado. First, it says it was excusably delayed beyond the contract completion date. Second, it contends the government waived its right to terminate. Third and fourth, it argues that the contracting officer abused her discretion by relying upon materially erroneous information and permitting herself to be influenced by a government inspector who made derogatory comments. Fifth, it maintains that, prior to terminating Watts, the government breached the implied duty of good faith and fair dealing by overly inspecting its work.

The government has moved for summary judgment, arguing that the Board may not exercise jurisdiction over the portions of the amended complaint asserting excusable delay or breach of contract. It also suggests that the undisputed facts fail to support either waiver, abuse of discretion, or breach of the duty of good faith and fair dealing. The government's jurisdictional objections are rejected. Summary judgment is entered in

---

[1] The motion also sought a stay while this request for summary judgment remained pending. That was addressed in response to other filings by the parties. We also note as discussed more below that the motion for summary judgment also included portions that were a motion to dismiss.

favor of the government upon Watts' waiver and abuse of discretion counts. Summary judgment is denied regarding Watts' allegation of breach of the duty of good faith and fair dealing arising from over inspection.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

The following facts are not the subject of genuine dispute.

1. On July 17, 2014, the United States Army Corps of Engineers (government) awarded the contract identified above to Watts for the design and construction of buildings on Fort Carson (am. compl. ¶¶ 18-20; gov't mot. at 2; R4, tabs 3-4). Among the incorporated clauses were Federal Acquisition Regulation (FAR) 52.243-4, CHANGES (JUN 2007); FAR 52.246-12, INSPECTION OF CONSTRUCTION (AUG 1996); and FAR 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) (R4, tab 3 at 155-56). After extensions, and except for tangential issues not relevant, the parties established November 22, 2016, as the deadline for contract completion (am. compl. ¶¶ 40-45; gov't mot. at 3-4).

2. Watts failed to complete performance by November 22, 2016, but continued working (am. compl. and answer ¶¶ 102-03).[2] On June 19, 2017, the government assessed and withheld from payment to Watts, liquidated damages for the period December 22, 2016 through April 30, 2017 (am. compl. and answer ¶ 103). On July 13, 2017, the parties bilaterally modified the contract, establishing December 21, 2017 as the new contract completion date (am. compl. and answer ¶¶ 102, 105; R4, tab 176). The terms of the modification provided that it "allow[ed] continued performance without waiving the Government's rights, including the right to assess liquidated damages until contract completion" (R4, tab 176). Eventually, the government released some previously withheld liquidated damages but continued to assess them going forward, leading to a net assessment of liquidated damages from January 3 until November 30, 2017 (am. compl. and answer ¶ 108; gov't prop. findings ¶ 6; app. stmt. gen. issues ¶ 6).

3. In a September 6, 2017 letter to the contracting officer, Watts described a meeting in which the government requested the designer to consider a new wall cavity for a building under construction. Watts noted that if the government elected to proceed it would submit a request for the costs and time related to the extra work (R4, tab 220).

4. On September 20, 2017, the contracting officer sent Watts a cure notice based upon its lack of progress and failure to maintain schedule milestones. According to the notice, Watts "jeopardized the successful completion of the contract by the contract completion date of December 21, 2017." The contracting officer gave Watts ten days to

---

[2] The answer cited is the one filed November 19, 2018, in ASBCA No. 61518, which responds to the amended complaint of October 19.

cure the condition, requiring that Watts provide a recovery plan to complete the work, including an updated project schedule and description of mitigation efforts. She warned that failure to comply could result in notification to Watts' surety of performance issues. She also explained that Watts could be liable for reprocurement costs should the contract be terminated for default. (Am. compl. and answer ¶ 113; R4, tab 228) Watts' September 30 response stated it would not complete the project until May 25, 2018, because of labor shortages, government direction to refrain from energizing electrical panels, and the government's suspension of work due to the wall cavity issue (am. compl. and answer ¶ 114; R4, tab 234). On December 20, 2017, the contracting officer notified Watts' surety that a termination for default appeared imminent and inquired into whether the surety would arrange to complete the work (gov't prop. findings ¶ 7; app. stmt. gen. issues ¶ 7; R4, tab 268).

5. Watts did not complete the project by the final extended completion date of December 21, 2017 (am. compl. ¶¶ 5(a), 49; gov't prop. findings ¶ 8; app. stmt. gen. issues ¶ 8). On that date, the contracting officer informed Watts by letter that the government deemed the schedule and completion date to remain in effect. She emphasized that it was not waiving any of its contract rights, expressly reserving the right to terminate for default and to continue assessing liquidated damages (gov't prop. findings ¶ 9; app. stmt. gen. issues ¶ 9; R4, tab 270).

6. During a January 8, 2018 meeting with Watts, the government agreed to review a resource loaded schedule, to be provided by Watts by January 24, describing how Watts would complete performance by May of 2018. The government doubted Watts could complete the project by that time, but stated it was looking for a realistic proposal. (Am. compl. and answer ¶¶ 116-18) A January 16 follow up letter from the contracting officer found that Watts' response to the government's cure notice was not compelling or its delay excusable. It did confirm the agreement to review a resource loaded schedule. The contracting officer emphasized that the December 21, 2017 completion date remained in effect, that the government did not waive any of its contract rights, and it reserved the right to terminate the contract for default. (Gov't prop. findings ¶ 11; app. stmt. gen. issues ¶ 11; R4, tab 281) On January 24, Watts submitted its proposed schedule for completion by May 24 (am. compl. and answer ¶ 120; R4, tab 294 at 8129).

7. On January 30, 2018, the contracting officer terminated the contract for default (gov't prop. findings ¶ 13; app. stmt. gen. issues ¶ 13; R4, tab 294). Repeating her finding that Watts had failed to provide compelling reasons not to terminate, she concluded that the delay in completion did not arise from unforeseeable causes beyond the control and without the fault of both Watts and its subcontractors. She also found that termination for default was in the government's best interest. The contracting officer rejected the January 24 schedule, saying that it was not fully resource loaded since it did not specify crew size for a given activity. She also concluded that the schedule inaccurately listed activities as complete, that its forecasted durations for activities were

3

unrealistic given prior progress, and it failed to provide adequate time to correct deficiencies. The contracting officer concluded that it was not possible for Watts to complete the project by May 24. (R4, tab 294) Watts appealed the termination on February 6, 2018, which the Board docketed as ASBCA No. 61518.

8. In addition to the above facts about contract performance, resolution of this motion also requires consideration of the following facts regarding the proceedings before us. The government has moved for summary judgment and to stay proceedings. Among its arguments, the government seeks dismissal of Count I of Watts' amended complaint, which contends that the default was excusable due to government delays, because Watts had not submitted that defense as a claim to the contracting officer for a decision. The Board ultimately granted an unopposed request by Watts for an extension of time to respond to the government's motion until after Watts submitted a delay claim to the contracting officer and sufficient time had elapsed for a decision. Watts then submitted a certified delay claim to the contracting officer seeking $863,021.99 and a 154-day time extension until May 24, 2018. The contracting officer responded that she lacked jurisdiction over the claim because the alleged delay was already at issue in ASBCA No. 61518. (App. opp'n, ex. A4) Watts appealed from that letter, contending that its claim should be deemed denied, which was docketed as ASBCA No. 61961. The Board then granted Watts' unopposed request for consolidation with ASBCA No. 61518.

DECISION

Though only titled a motion for summary judgment, the government also seeks dismissal of some of the counts of Watts' complaint for lack of jurisdiction. As the proponent of the Board's jurisdiction over the defenses advanced in its complaint, Watts bears the burden of proving jurisdiction by a preponderance of the evidence. However, the Board must accept as true the complaint's undisputed facts and draw all reasonable inferences in favor of Watts. *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). For those counts subject to the request for summary judgment, it should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A non-movant seeking to defeat the suggestion that there are no genuine issues of material fact may not rest upon its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Summary judgment may be used "to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-24. Thus, it may be entered upon individual portions of the appeal. *See* FED. R. CIV. P. 56(a).

"Time is of the essence in any contract containing fixed dates for performance." *DeVito v. United States*, 413 F.2d 1147, 1154 (Ct. Cl. 1969). This contract's default clause permitted termination if Watts failed to complete the work within the time specified

4

in the contract, including any extension. FAR 52.249-10(a); *ECC CENTCOM Constructors, LLC*, ASBCA No. 60647, 18-1 BCA ¶ 37,133 at 180,718, *appeal docketed*, No. 19-1157 (Fed. Cir. Nov. 5, 2018). Watts did not complete the project by the final, extended completion date (SOF ¶ 5). However, Watts' right to proceed could not be terminated if the delay arose from "unforeseeable causes beyond the control and without the fault or negligence of" Watts. FAR 52.249-10(b)(1). Watts bears the burden to show that its nonperformance was excusable. *Marshall's Elec., Inc.*, ASBCA No. 59749, 16-1 BCA ¶ 36,300 at 177,017. To defeat summary judgment, Watts "must 'make a showing sufficient to establish the existence of an element essential to' any matter 'on which [Watts] will bear the burden of proof at trial.'" *Third Coast Fresh Distribution, L.L.C.*, ASBCA No. 59696, 16-1 BCA ¶ 36,340 at 177,194 (quoting *Celotex*, 477 U.S. at 322-23).

## I.    Count I

Watts' first basis to excuse its failure to perform on time is that it encountered excusable delays. According to Watts, the government directed changes and a suspension of work to the project's SCIF walls, door hardware, and to the security system.[3] The government also failed to timely review and approve submittals for the project's Hazardous Energy Control Plan, which delayed commissioning the project's mechanical and electrical systems. (Am. compl. ¶¶ 5(a), 49-101) Count I of the amended complaint contends these delays were unforeseeable, beyond Watts' control, and without its fault or negligence, entitling it to an extension of the contract completion date past December 21, 2017 (am. compl. ¶¶ 167-73).

The government suggests the Board must dismiss Count I because it lacks jurisdiction to consider Watts' allegations of excusable delay. Its reason is that Watts did not submit its delay claim to the contracting officer in accordance with the terms of the Contract Disputes Act (CDA), 41 U.S.C. § 7103, prior to appealing the default. It relies upon three cases as support. They are *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1331 (Fed. Cir. 2010) ("[A] contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the CDA, whether asserting the claim against the government as an affirmative claim or as a defense to a government action"); *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1363 (Fed. Cir.), *cert. denied*, 139 S. Ct. 478 (2018) ("[T]o the extent the affirmative defense seeks a change in the terms of the contract—for example, an extension of time...it must be presented to the [contracting officer]"); and *ECC CENTCOM*, 18-1 BCA ¶ 37,133 at 180,713 ("[A] contractor contesting...a default termination due to excusable delay must submit a claim for a time extension before appealing to the Board").

---

[3] A SCIF is a sensitive compartmented information facility.

5

Watts first responds that it did not have to submit a delay claim to defend against the default on that ground, inviting the Board not to follow its recent decision in *ECC CENTCOM*. It is not necessary to proceed down that path because, as Watts alternatively emphasizes, it in fact submitted a delay claim to the contracting officer after the government moved for summary judgment (SOF ¶ 8). When the contracting officer refused to decide it, claiming lack of authority to do so, Watts appealed to this Board. Hence, Watts' delay claim is before the Board and, with the consent of the government, that appeal has been consolidated with its appeal from the default termination.

In an attempt to preclude this delay defense, the government advances two objections to the validity of Watts' delay claim. First, the government suggests the contracting officer lacked authority to decide the claim, implying therefore that it was neither submitted nor deemed denied. The government advances a variation of a principle applicable to suits in the United States Court of Federal Claims. There, "[b]elatedly submitting a certified claim to a [contracting officer] once a claim is in litigation is not a cure for failing to present a claim to the [contracting officer] before filing suit." *Emiabata v. United States*, 135 Fed. Cl. 213, 218 (2017). This is because once a claim is before that court, even if not proper because it was not first submitted to the contracting officer, federal law divests the agency of authority to decide it. *See K-Con Bld. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015). The government suggests one of the Army's own regulations, AFARS 5133.212-90, a provision of the Army FAR Supplement, imposes the same rule for appeals here. That regulation vests authority and responsibility for the conduct and control of Corps contract litigation before this Board to the Army or Engineer Chief Trial Attorneys. However, AFARS 5133.212-90 is not nearly as sweeping as the absolute transfer to the Department of Justice "the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense" of "any case referred...for...defense." Exec. Order No. 6166 § 5 (1933), *reprinted in* 5 U.S.C. § 901, *cited in Durable Metal Prods., Inc. v. United States*, 21 Cl. Ct. 41, 45-46 (1990); *see also* 28 U.S.C. §§ 516-20. AFARS 5133.212-90 does not transfer authority over matters that are the subject of litigation here to an agency other than the Department of the Army, nor does it purport to divest the contracting officer of her usual role as the agency counsel's client official with authority over the claim's ultimate disposition. Historically, Corps contracting officers have normally retained that power. *See, e.g., J.W. Bateson Co.*, ASBCA No. 24425, 84-1 BCA ¶ 16,942. The government cites no precedent interpreting the regulation as it suggests and its position is therefore rejected. The contracting officer possessed authority to decide Watts' delay claim and her refusal to do so is a deemed denial. *See* 41 U.S.C. § 7103(f)(5).

The government's second objection to Watts' delay claim rests upon *ECC CENTCOM's* statement that a defense to a default premised upon excusable delay "must [be] submit[ed] as a claim for a time extension before appealing to the Board." 18-1 BCA ¶ 37,133 at 180,713. Watts did submit its certified delay claim to the contracting

6

officer before appealing it to the Board (SOF ¶ 8). Contrary to the government's suggestion, *ECC CENTCOM* did not squarely hold that, to pursue delay as a defense to default, a contractor must submit its delay claim before it appeals the default termination. No delay claim was submitted there. Additionally, nothing in the CDA constricts the time period for submitting a delay claim to less than 90 days (the time period for appealing a default termination to this Board under 41 U.S.C. § 7104(a)) when proffered as a defense to a timely appealed default termination. Under 41 U.S.C. § 7103(a)(4), contractors have six years after accrual to submit a claim.

It is true that, after hearing ECC CENTCOM's challenge to its default termination, the Board raised the possibility that it lacked jurisdiction to consider a delay defense due to the absence of a claim. 18-1 BCA ¶ 37,133 at 180,711-13. After resisting that prospect, ECC CENTCOM alternatively requested a stay so that it could pursue the claim and consolidate a subsequent appeal with the existing one. The Board did not hold that such a claim would be time-barred; it simply denied a stay due to the lateness of the request.[4] It also emphasized that such a claim would be futile because the alleged delay would not affect the validity of the default. *ECC CENTCOM*, 18-1 BCA ¶ 37,133 at 180,715. Here, the government agreed to an extension of time for Watts to respond to the government's dispositive motion based upon the absence of a delay claim so that Watts could submit that claim to the contracting officer. The time necessary for Watts to submit the claim has already been granted with the government's consent. *ECC CENTCOM*'s reasoning for denying the time is therefore inapplicable.

The government's request to dismiss Count I for lack of jurisdiction is denied.

II.     Count II

The second basis Watts advances to excuse its failure to perform on time is that the government waived the contract completion date (am. compl. ¶¶ 102-28, 174-86; app. stmt. gen. issues ¶¶ 27-43). Watts complains that the government waited seven months after Watts missed its earlier, November 22, 2016 deadline before it assessed liquidated damages in June of 2017. Similarly, it observes the government waited

---

[4] The Board's denial of a stay reflected its retention of power to control its docket and protect the parties from undue prejudice. See *ECC CENTCOM*, 18-1 BCA ¶ 37,133 at 180,715. Thus, a delay claim submitted to the contracting officer long after a termination for default is appealed, though possibly not time-barred under the CDA, might be too prejudicial to the government to permit its consolidation with the default appeal and entertained as a defense. Conversely, the government's threat that it might game the proceedings and purposely postpone a motion to dismiss until late in the litigation, to avoid consolidation with the appeal of a subsequent delay claim, is beneath the standards expected of it (see govt. reply br. at 9). Such a strategy would likely fail.

7

eight months, until July 13, 2017, to execute a bilateral modification with Watts to extend the completion date to December 21, 2017. It contends that the government's net assessment of liquidated damages on January 3, 2017, is the date the government believed Watts was in default. It suggests the government acquiesced to its eventual declaration that the project would not be complete until May 25, 2018, by not objecting to that date, agreeing to review a resource loaded schedule to support it, and stating it was looking for a realistic completion date. In Count II of the amended complaint Watts maintains that all of these facts show the government did not consider time of the essence and induced Watts to incur additional costs performing the contract between December 21, 2017, and January 30, 2018. It adds in response to the government's motion that it was over 90 percent complete as of December 21 and spent over $1 million after that date (app. stmt. gen. issues ¶¶ 42-43). Watts argues that a failure by the government to immediately terminate for default under those circumstances was also a manifestation that it did not intend to enforce the completion date. The government seeks summary judgment upon Count II, contending that the undisputed facts fail as a matter of law to support a finding that it waived the completion date.

Waiver is an affirmative defense that Watts bears the burden to prove. *See DayDanyon Corp.*, ASBCA No. 57681, 15-1 BCA ¶ 36,073 at 176,152, *aff'd*, 673 F. App'x 997 (Fed. Cir. 2017). "The...waiver doctrine...protect[s] contractors who are led to believe that time is no longer of the essence" when allowed "'to continue [substantial] performance past a due date,' under circumstances that justify a conclusion that the default has been excused." *Fla. Dept. of Ins. v. United States*, 81 F.3d 1093, 1096 (Fed. Cir. 1996) (quoting *DeVito*, 413 F.2d at 1153-54). But, waiver of default does not normally apply to construction contracts absent unusual circumstances. *HK&S Constr. Holding Corp.*, ASBCA No. 60164, 19-1 BCA ¶ 37,268 at 181,352; *AmerescoSolutions, Inc.*, ASBCA No. 56811, 10-2 BCA ¶ 34,606 at 170,549-50. Essentially, waiver is only recognized in the case of such a default when the government manifests that it no longer considers the contract completion date enforceable. *Technocratica*, ASBCA No. 47992 *et al.*, 06-2 BCA ¶ 33,316 at 165,187.

Watts has failed to make a showing that there is anything unusual here. It is not relevant that seven months passed before the government assessed liquidated damages for Watts' failure to comply with the prior November 22, 2016 completion date. Nor does it matter that the government waited eight months before it extended the completion date. What matters is that the July 13, 2017 modification consented to by Watts established December 21, 2017 as the new completion date "without waiving the Government's rights, including the right to assess liquidated damages until contract completion" (SOF ¶ 2). *See DeVito*, 413 F.2d at 1154 (noting the government may reestablish that time is of the essence after waiving a prior completion date by setting a new date). From then on, the government consistently maintained that the December 21 date was binding. The government's September 20 cure notice warned Watts that its lack of progress jeopardized completion of the contract by December 21. On December 20, the contracting officer

notified Watts' surety that termination for default appeared imminent. (SOF ¶ 4) On December 21, upon Watts' failure to complete on time, the government informed Watts that it deemed the schedule and completion date in effect, it was not waiving its contract rights, and it reserved the right to terminate for default (SOF ¶ 5). On January 16, 2018, the government stated that it did not find Watts' response to its cure notice compelling or its delay excusable. While acknowledging that it would review a resource loaded schedule for completion in May, the government repeated that it considered the December 21, 2017 completion date in effect, it did not waive its contract rights, and it reserved the right to terminate the contract for default. (SOF ¶ 6) Two weeks later the government terminated for default (SOF ¶ 7). Neither the government's willingness to consider Watts' resource loaded schedule, nor its comment that it was looking for it to be realistic, retracted its consistent communications that it was waiving nothing. *See ASFA Int'l Constr. Indus. and Trade*, ASBCA No. 57880, 14-1 BCA ¶ 35,736 at 174,912 (stating that a government encouragement to complete performance during a forbearance period is not a waiver absent further indication that the completion date is considered unenforceable); *see also McDonnell Douglas Corp. v. United States*, 182 F.3d 1319, 1327 (Fed. Cir. 1999) (observing that a manifestation of desire to proceed with the contract is not itself a waiver). These undisputed facts refute any suggestion that, to the extent Watts performed any work after December 21, it was against the backdrop of a government manifestation that it no longer considered that to be the completion date.

Watts has not established a genuine issue of material fact respecting any of the elements of Count II's waiver defense. The government is entitled to summary judgment upon that count as a matter of law.

III.    Count III

Watts' third basis for relief challenges the validity of the termination for default on the ground that the contracting officer erroneously interpreted its January 24, 2018 resource loaded schedule. Watts contests the contracting officer's conclusion that the schedule was incomplete and that it was not possible to complete the project by May 25. It also attacks the contracting officer's statement that the schedule inaccurately reflects certain activities as complete, reduced the time for testing, air balancing and commissioning activities, and eliminated required reviews (am. compl. ¶¶ 129-42). It relies upon a letter it sent to the contracting officer challenging her conclusions. It also relies upon the preliminary report of a consultant to its surety stating that the contracting officer was in error. It further cites the opinion of the government's construction chief that the schedule did not reduce testing time, appeared reasonable, and was resource loaded. (App. stmt. gen. issues ¶¶ 44-53) Count III of the amended complaint therefore alleges that the contracting officer's decision to terminate was based upon materially erroneous information, adding that the government's decision failed to consider Watts' excusable delays. Watts says the contracting officer abused her discretion and that its default termination should therefore be set aside. (Am. compl. ¶¶ 187-93) The

government seeks summary judgment on this count, arguing that Watts' evidence fails to amount to an abuse of discretion.

"The level of discretion that must be exercised by the government before terminating a contract for default is a question of law." *McDonnell Douglas*, 182 F.3d at 1325. The extent of that discretion is broad, but the decision can be set aside if it is abused. *Id.* at 1326; *Third Coast Fresh Distribution*, 16-1 BCA ¶ 36,340 at 177,194. "[T]he government may not use default as a pretext for terminating a contract for reasons unrelated to performance; instead, there must be a nexus between the government's decision to terminate for default and the contractor's performance." *McDonnell Douglas*, 182 F.3d at 1329.

Much of Watts' argument flows from its contention that the contracting officer partially based the default decision upon a belief that Watts' proposed new completion date was unrealistic (app. opp'n, ex. C at 104-05). That the contracting officer may have been incorrect about Watts' proposal for a new completion date does not demonstrate that she abused her discretion terminating it for defaulting upon the existing completion date. That proposal was for the contracting officer's consideration. She made clear that her willingness to review it was not a waiver of the government's rights, including the right to terminate for default (SOF ¶ 6). The contracting officer could have terminated for default regardless of whether Watts could complete the work later. *See HK&S Constr.*, 19-1 BCA ¶ 37,268 at 181,352 ("However the contracting officer arrived at her termination decision, the government may rely upon appellant's failure to do its job to justify the termination.").

Additionally, to find that a default termination reflects an abuse of discretion because it was based upon "materially erroneous information" normally requires bad faith. *See Delfasco LLC*, ASBCA No. 59153, 17-1 BCA ¶ 36,659 at 178,527-28; *see also McDonnell Douglas*, 182 F.3d at 1326 (identifying bad faith as an element of abuse of discretion). The contracting officer "is presumed to have acted in good faith." *Empire Energy Mgmt. Sys., Inc.*, ASBCA No. 46741, 03-1 BCA ¶ 32,079 at 158,553, *aff'd*, 362 F.3d 1343 (Fed. Cir. 2004). To prove bad faith, Watts would have to "show with convincing clarity a high probability that she acted from personal animus with specific intent to injure" it. *Id.*; *see also ADT Constr. Grp, Inc.*, ASBCA No. 55358, 13 BCA ¶ 35,307 at 173,313 ("[A]ppellant makes no assertion, and there is no evidence, that the contracting officer acted out of a personal sense of bad faith"). Watts has failed to even allege such facts, much less "make a showing sufficient to establish the existence of [this] element...on which [Watts would] bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, there is no evidence the termination was pretextual. *See McDonnell Douglas*, 182 F.3d at 1326-27. There is also no evidence the contracting officer exceeded the scope of the discretion vested in her, and Watts has not alleged that the contracting officer violated any regulations or law. *See Shubhada Indus., Inc.*, ASBCA No. 54016, 08-1 BCA ¶ 33,733 at 167,019. Finally, the contracting officer was

not presented with an excusable delay claim at the time of the default. Her mere rejection of Watts' allegations of it is not, by itself, bad faith.

Watts has not established a genuine issue of material fact respecting any of the elements of Count III's allegations. The government is entitled to summary judgment upon that count as a matter of law.

IV. Counts IV and V

A. Request for Dismissal

Both Counts IV and V assert breach of the implied duty of good faith and fair dealing. The government contends that Watts must submit a CDA claim to the contracting officer to pursue breach of contract as a defense to the contract's termination for default and seeks dismissal of the counts for that reason. That is incorrect. *Securiforce Int'l Am.*, 879 F.3d at 1362-63 (stating that a common law affirmative defense to a termination for default, such as prior material breach, is not a claim that must be presented to the contracting officer). Accordingly, the request to dismiss is denied.

B. Request for Summary Judgement upon Counts IV and V

1. Count IV

Watts' fourth basis for relief alleges that the government's quality assurance representative (QAR) made offensive comments to it. Watts has presented the declaration of a manager who states that the QAR threatened to "get rid" of Watts and asked whether Watts was bankrupt. According to the declaration, the QAR referred to Watts' project manager as a "liar" and said that the manager acted in "Watts' interest only." The QAR also more generally called Watts' personnel "liars" and "crooks" and said he was "going to take care of the government because the government always wins." The QAR asked if "Watts had gone bust yet." He asked Watts to leave discussions, excluded it from meetings, cancelled meetings, and declined to allow Watts to record information in accordance with its preferences. He called one of Watts' superintendents "fat." (App. opp'n, ex. B; app. supp. R4, tabs 108, 113-14)[5] Count IV of the amended complaint alleges that these statements and actions show animus, improper motive, and an intent to harm Watts, reflecting an abuse of discretion in terminating the contract that breached the implied duty of good faith and fair dealing (am. compl. ¶¶ 194-202). The government seeks summary judgment, observing that the QAR's behavior says nothing about the motive of the contracting officer terminating the contract and therefore does not demonstrate abuse of discretion.

---

[5] Additional allegations contained in the declaration of Watts' manager are rejected because they are not made on personal knowledge. FED. R. CIV. P. 56(c)(4).

Though rude conduct by the QAR might be unpleasant, it does not demonstrate that the contracting officer abused her discretion terminating the contract for default. Watts does not allege that the contracting officer was influenced by the QAR, even knew about the QAR's behavior toward it, much less that she shared any animosity that he might have harbored. The QAR's allegedly poor demeanor does not show that Watts' default termination was issued by the contracting officer for reasons unrelated to Watts' failure to perform on time. It does not demonstrate she "acted from personal animus with specific intent to injure" it. *Empire Energy Mgmt.*, 03-1 BCA ¶ 32,079 at 158,553.

Similarly, the covenant of good faith and fair dealing contained in every contract imposes a "duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.'" *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)). Mean behavior alone would not destroy Watts' expectations regarding the contract's fruits. Watts has not established a genuine issue of material fact respecting any of the elements of Count IV's allegations. The government is entitled to summary judgment upon that count as a matter of law.

### 2. Count V

Watts' fifth basis for relief asserts that the government's inspectors were overzealous. Its manager's declaration states the QAR "interfered" with stucco installation and arbitrarily rejected it. The QAR allegedly over-inspected waterproofing, lathe and finish. He made Watts scrape glue resin without justification, cleanout and brush the interior of an electrical box, and paint wires. The QAR directed subcontractors without Watts' knowledge. Also, government inspectors were slow, repetitive, covered work that they should not have, and performed "multiple inspections." (App. opp'n, ex. B) Count V alleges that over inspection by the government breached the implied duty of good faith and fair dealing (am. compl. ¶¶ 203-10).

The government's request for summary judgment upon Count V contends that an element of a claim for breach of the duty of good faith and fair dealing is bad faith or improper motive. It says Watts cannot make that showing. Breach of the covenant of good faith and fair dealing does not require the violation of an express term of the contract, "[b]ut a specific promise must be undermined for the implied duty to be violated." *Dobyns*, 915 F.3d at 739. Contrary to the government's suggestion, improper motive is not an element of such a breach. The duty may be breached "even if 'the actor believes his conduct to be justified.'" *Labatte v. United States*, 899 F.3d 1373, 1379 (Fed. Cir. 2018) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. d (1981)).

12

The Inspection of Construction clause permits just that. But, "confusing and vacillating" inspections, "multiple inspections to differing standards," or "arbitrary and capricious" inspections leading to additional "work not required by the contract," have established a basis for contractual recovery under a constructive change theory. *See W.F. Kilbride Constr., Inc.*, ASBCA No. 19484, 76-1 BCA ¶ 11,726 at 55,884 (pre-CDA decision). There is precedent finding that a breach of contract theory is foreclosed when a contract provision such as the Changes clause grants the necessary remedy. *See Hoel-Steffen Constr. Co. v. United States*, 456 F.2d 760, 768 (Ct. Cl. 1972). That said, the government does not contend that overzealous inspection fails to support a breach of the implied duty of good faith and fair dealing, and the Board has somewhat acknowledged the possibility while also entertaining a possible constructive change. *See Die-Matic Tool Co.*, ASBCA No. 31185, 89-1 BCA ¶ 21,342 at 107,601-03, *aff'd*, 889 F.2d 1100 (Fed. Cir. 1989) (Table). Watts has presented adequate evidence of interference, over-inspection, slow, redundant, and multiple inspections, to require more factual development to determine the application of the good faith and fair dealing doctrine. *See Tkacz Eng'g, LLC*, ASBCA No. 60358, 18-1 BCA ¶ 36,940 at 179,962-63 (concluding that mixed questions of fact and law preclude summary judgment). Accordingly, summary judgment upon Count V is denied.

## CONCLUSION

The government's request to dismiss Count I of the amended complaint is denied. The government's request for summary judgment upon Counts II and III is granted. The government's request to dismiss Counts IV and V is denied. The government's request for summary judgment upon Count IV is granted. The government's request for summary judgment upon Count V is denied.

Dated: June 24, 2019

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

13

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61518, 61961, Appeals of Watts Constructors, LLC, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

14