ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
Satterfield & Pontikes Construction, Inc. ) ASBCA Nos. 59980, 62301
)
Under Contract No. N69450-12-C-0754 )

APPEARANCES FOR THE APPELLANT: Douglas L. Patin, Esq.
Amy E. Garber, Esq.
Bradley Arant Boult Cummings LLP
Washington, DC

APPEARANCES FOR THE GOVERNMENT: Craig D. Jensen, Esq.
Navy Chief Trial Attorney
Matthew D. Bordelon, Esq.
Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE PAGE ON THE GOVERNMENT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION

Satterfield and Pontikes Construction, Inc. (S&P, contractor, or appellant) appeals in ASBCA No. 59980 from the termination of its contract for default, and seeks monetary damages resulting from that termination in ASBCA No. 62301. The Department of the Navy (Navy, government, or respondent) moves to dismiss these appeals, arguing that the contracting officer (CO) has withdrawn the final decision (COFD) that terminated the contract for default, and converted the termination to one for the convenience of the government in accordance with the parties' Settlement Agreement. The government moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject-matter jurisdiction. It contends these appeals are moot because the contractor received all relief requested under the parties' Settlement Agreement, the agreement bars the appeals, and the Board is without jurisdiction where the COFD that was the basis for the default termination was withdrawn. We deny the motion.

STATEMENT OF FACTS (SOF) FOR THE PURPOSES OF THE MOTION[1]

*The Contract*

1. On July 25, 2012, the Navy awarded S&P fixed-price Contract

---

[1] The SOF reflects the procedural complexity of these appeals, and includes the parties' filings where intertwined with and relevant to the motion to dismiss. We note that S&P filed ASBCA No. 62301 (seeking monetary damages from

No. N69450-12-C-0754 in the amount of $19,096,000 for the "design bid build" of the "Branch Health Clinic replacement facility" at Naval Construction Battalion Center (NCBC), in Gulfport, Mississippi (R4, tab 14 at GOV3037,[2] GOV3074).

2. Relevant contract clauses incorporated by reference include Federal Acquisition Regulation (FAR) 52.249-2 ALT I, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004) – ALTERNATE I (SEP 1996) and 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) (R4, tab 14 at GOV3096, GOV3098).

*The Government's Termination of S&P's Contract for Default*

3. By COFD dated May 5, 2015, the government terminated the instant contract for default. The stated basis was: "S&P has breached its contractual duty by failing to make progress with the diligence required to ensure its completion within the time specified in the contract (i.e., there is no likelihood that S&P can perform the entire contract effort within the time remaining for contract performance)." (R4, tab 55 at GOV3400)

*S&P's Appeal from the Termination for Default: ASBCA No. 59980*

4. S&P's timely notice of appeal dated May 8, 2015 (R4, tab 56) was docketed as ASBCA No. 59980. Its complaint of July 1, 2015 "request[ed] that the ASBCA reverse the [COFD] to terminate the Contract for default and convert the termination for default to a termination for convenience" (ASBCA No. 59980 complaint (59980 compl.) at 4). Appellant says that the termination for default "was arbitrary and capricious and an abuse of discretion" (*id*. ¶ 16), and that "the Government failed to respond to [requests for information] and submittals in a timely manner" (*id*. ¶ 4). S&P contends that the government from the outset "delayed the execution of modifications to the Contract to cover this changed work." It faults the government for "arbitrarily decid[ing] not to issue

___

the allegedly wrongful termination for default) and No. 62714 (claiming compensable and non-compensable delay to the contract by the government) after the government moved to dismiss No. 59980 and that the parties then filed additional motions that generally related to reopening the proceedings and to supplementation of the record. All this resulted in protracted briefing.

[2] We cite to the "Bates stamp" type of pagination, later affixed by the parties, where appropriate. For ease of reference to the government's Rule 4 documents, we preface the referenced page number (where applicable) with "GOV" instead of "GOV000." Appellant's supplementations to the Rule 4 file are identified as "app. supp. R4" before listing the tab number. We similarly preface the referenced page number for appellant's documents (where applicable) with "SPC" instead of "SPC000."

unilateral change orders under the Contract, and demand[ing] that Appellant waive its rights to recoup additional costs and/or obtain additional time necessary to perform the changed work under the Contract." Appellant says these actions "delayed contractual modifications necessary for the Appellant to proceed with work that was on the critical path for completion of the Project." (*Id.* ¶ 6)

5. The government's answer in No. 59980 raised this affirmative defense: "To the extent that Appellant's claims include work associated with any of the modifications to the contract, Appellant is barred by Accord and Satisfaction." The government "reserve[d] the right to assert any other affirmative defenses which may become known to it." (59980 answer at 4)

*The Parties' Settlement Agreement*

6. On August 22, 2016, S&P and the government entered into a "Release and Settlement of All Claims" (Settlement Agreement). This agreement acknowledged the government's termination of the contract for default, and contemplated a "separate takeover agreement [Takeover Agreement] between the Government and Sureties … to complete performance under the Contract . . . ." (R4, tab 58 at GOV29195) Paragraph 1 stated: "Notwithstanding anything herein to the contrary, the agreements contained herein are in consideration of and contingent upon the execution of a Takeover Agreement between the Government and the Sureties" (*id*. at GOV29196 ¶ 1). Liberty Mutual Insurance Company (Liberty Mutual) and Western Surety Company (Western) were named as sureties for S&P (*id*. at GOV29195).

7. The Settlement Agreement (R4, tab 58) was not "incorporated into the contract" (tr. 1/87).[3] In accordance with this agreement, the parties agreed to a stay of litigation pending completion of the work by a contractor hired by the sureties (the "completion contractor"). Appellant agreed to move for dismissal of ASBCA No. 59980 within five days of the government's acceptance of the work. (R4, tab 58 at GOV29197 ¶ 6-7)

8. Paragraph 2 of the Settlement Agreement states that, upon satisfaction of the terms of the agreement, the government will "rescind" the May 5, 2015 COFD and convert the termination to a "no-cost" termination for the convenience of the government. The parties agreed this would follow completion of the work as described in the Takeover Agreement and the contract. (R4, tab 58 at GOV29196 ¶ 2)

---

[3] Transcript references are to the oral argument conducted by the Board on January 31, 2019 on appellant's motion to reopen ASBCA No. 59980, which the government opposed. The Board granted the motion and lifted the stay in the proceedings but made clear it was not ruling on the merits of the appeal. (Tr. 1/93-94)

3

At ¶ 3, they agreed that liquidated damages (LDs) would "not be assessed except as set forth under the terms of the Takeover Agreement" (*id*. at GOV29196 ¶ 3). In ¶ 4 "Release by S&P" and ¶ 5 "Release by the Government," S&P and the government respectively agreed to release one another "from any claims or liabilities in connection with, arising out of or incidental to Contract No. N69450-12-C-0754 and to the disputes, claim, and litigation at the ASBCA [in] No. 59880, including those claims that may arise in the future. . . ." (*id*. at GOV29196-97 ¶¶ 4-5). Paragraph 17 "Entirety of Agreement" (the entireties clause) concludes with this statement: "Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement" (*id*. at GOV29207 ¶ 17).

9. Paragraph 8 of the Settlement Agreement is relevant to the government's motion to dismiss:

> Notwithstanding anything herein to the contrary, this Agreement in general and the conversion of the default termination into a termination for convenience specifically, shall not operate to obviate, nullify, and[/]or otherwise affect the obligations and responsibilities of the Sureties pursuant to the Bonds referenced herein and pursuant to that certain Takeover Agreement between the Government and the Sureties. In the event that: (a) all or part of this Agreement is determined to be void, inapplicable or otherwise nullified by a court or Board of competent jurisdiction, or is otherwise reformed by such court or Board; or (b) the Sureties assert in any future claim, appeal or litigation arising out of the Contract or Takeover Agreement, that the terms of this Agreement, and[/]or conversion of the default termination pursuant to this Agreement, modifies, voids, amends or otherwise affects the rights of the Government under the terms of the Bonds, the Contract, and[/]or the Takeover Agreement, then the Government shall have the absolute right to issue a final decision to restore and otherwise reinstate the original termination for default as if it had not been rescinded, and Appellant shall have the right to refile its Termination Appeal.

(R4, tab 58 at GOV29198 ¶ 8)

4

*The Takeover Agreement between the Government and S&P's Sureties*

10. On August 25, 2016, the government entered into a Takeover Agreement with S&P's sureties Liberty Mutual and Western; appellant was not a party to that agreement (R4, tab 59). Paragraph 3 stated that the parties had investigated the work done by S&P, and exhibit 1 identified corrective work to be done by the sureties. It provided that "if additional defective or nonconforming work is discovered during performance under the Takeover Agreement, the parties will continue to work toward a resolution through the process identified in Paragraph 4 below, and such corrective and[/]or remedial work shall be at no cost to the Government." Paragraph 4 set forth a "[p]rocess for addressing unresolved corrective work requirements," and the parties to this agreement acknowledged the involvement of the Designer of Record (DOR) as critical to this effort. Paragraph 5 noted there was remaining work to be done that had not been performed by S&P prior to the termination for default, and ¶ 6 depicted a schedule showing that the "Health Clinic substantial completion date" would be "[t]en (10) months after Commencement of Work for all work north of Marvin Shields Boulevard." (*Id*. at GOV29202-05 ¶¶ 3-6)

*The Stay of Proceedings in ASBCA No. 59980 and Appellant's Motion to Reopen the Appeal*

11. The Board on September 20, 2016, granted the parties' September 19, 2016 "Joint Motion to Stay Proceedings" in No. 59980. The motion was supported by the Settlement Agreement of August 22, 2016. A mediation set for May 14, 2018, was postponed at the parties' request, and litigation recommenced after the Board granted S&P's motion to resume proceedings.

*The Government's Withdrawal of the Termination for Default and Conversion to a Termination for the Convenience of the Government*

12. The government's May 8, 2019[4] letter to S&P cited the termination for default of May 5, 2015, as well as the Settlement Agreement. It said the latter document "provided for a conversion of the Default Termination to a Termination for Convenience upon completion and acceptance of the project under the Takeover Agreement" executed by the government and the sureties. The government noted that the Settlement Agreement "also excused [LDs] for remaining work as set forth in the Takeover Agreement and included that within five (5) calendar days of completion and acceptance by the Navy of work under the Takeover Agreement, S&P will dismiss the Termination Appeal with prejudice." (App. supp. R4, tab 65 at SPC29202)

---

[4] The letter is misdated "May 8, 2018," an apparent error.

5

13.  The government's May 8, 2019 letter referenced the release provisions of the Settlement Agreement.  It reiterated the government's right to reinstate the termination for default under certain circumstances, and to "assess [LDs] under the original contract" if that occurred.  (App. supp. R4, tab 65 at SPC29202)

14.  The CO on May 20, 2019 notified S&P that because the government "has accepted all work under the Takeover Agreement, effective May 17, 2019," the termination for default "is hereby converted to a Termination for Convenience, and [LDs] under the contract are excused" (R4, tab 64).  This COFD did not state that the convenience termination was at no cost to the government (*id*.), and closely tracked the government's letter of May 8, 2019 (app. supp. R4, tab 65 at SPC29202).  The government reminded appellant that in accordance with the Settlement Agreement, "S&P will dismiss the Termination Appeal [ASBCA No. 59980] with prejudice" following completion of work under the Takeover Agreement.  The government requested that S&P do so within five calendar days.  (R4, tab 64)  We find that the May 20, 2019 COFD is conditional and equivocal, due to the government's reiteration of its right to reinstate the default termination under certain circumstances.

15.  On May 28, 2019, S&P replied that it would not seek dismissal of ASBCA No. 59980.  Appellant disagreed "that the Navy's acceptance of the work under the Takeover Agreement and its subsequent conversion of the termination for default to a termination for convenience renders S&P's appeal moot."  It alleged that "The Navy materially breached the settlement agreement and S&P is not bound by the release contained therein.  As such, S&P is not dismissing the appeal."  (App. opp'n dtd. July 30, 2019, ex. 4)

*The Government's Motion to Dismiss ASBCA No. 59980 and Appellant's Opposition*

16.  When S&P did not move for dismissal of No. 59980 following conversion to a termination for convenience, the government on May 30, 2019, filed a motion to dismiss (gov't mot. dtd. May 30, 2019).  The government contended that conversion made the appeal moot because "S&P has received the entirety of the relief sought in this appeal" and the Board no longer has jurisdiction (*id*. at 1).

17.  On July 30, 2019, S&P opposed the government's motion to dismiss on several grounds (app. opp'n dtd. July 30, 2019).  Among other things, it asserts that the government's letter of May 8, 2019 "makes the subsequent May 20, 2019 conversion letter conditional (and therefore equivocal) upon the enforcement of the release in the Settlement Agreement."  Appellant cites *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 373 (2012), for the proposition that "[a] case can only become moot when '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation [here, the improper termination] will recur, and, (2) interim relief or events

6

have completely and **irrevocably** eradicated the effects of the alleged violation.'" (*Id.* at 2-3) (emphasis added and internal quotations omitted by appellant)

*Appellant's Monetary "Termination for Convenience Claim" and the Government's COFD in ASBCA No. 62301*

18. S&P on June 13, 2019, submitted a certified "Termination for Convenience Claim" to the CO (app. supp. R4, tab 65 at SPC29199) seeking $10,990,891 (*id.* at SPC29402). Appellant alleges that it "is entitled to recover [these] termination for convenience costs as another contractor is entitled to recover when there is a conversion to a termination for convenience" (*id.* at SPC29201).

19. According to appellant, the government "breached [the Settlement Agreement] by virtue of its material failure to honor its obligations under the Takeover Agreement [with] compliance with the Takeover Agreement being a condition precedent to effect the release in the Settlement Agreement" (app. supp. R4, tab 65 at SPC29200-01). S&P incorporated its motion to reopen the appeal into its claim as well as its brief in support (*id.* at SPC29214-38).

20. The contractor's June 13, 2019 claim asserted that the COFD converting the default to a convenience termination was a "sham," and that the government "has no intent to entertain a termination for convenience claim for S&P's pre-termination and surety excess reprocurement costs." Appellant alleged that the CO's May 8, 2019 letter made the "May 20, 2019 conversion conditional on the enforceability of the Settlement Agreement." S&P said that the government's reservation of the "right to reinstate the original default termination and to assess [LDs] if it is determined that the [Settlement Agreement] is 'void, inapplicable or otherwise nullified'" showed that the "termination for convenience conversion is qualified and equivocal." (App. supp. R4, tab 65 at SPC29201) Among documents supporting appellant's June 13, 2019 claim is the government's letter of May 8, 2019, which referenced the Settlement Agreement (*id.* at SPC29202).

21. By COFD dated November 25, 2019, the government denied S&P's June 13, 2019 claim (app. supp. R4, tab 66). The CO reiterated that the Settlement Agreement provided for rescission of the termination for default and conversion to a no-cost termination for convenience, and that appellant "granted the Government full and final release from all claims under the contract." This COFD specified that the conversion was "to a no-cost Termination for Convenience," and tied the contractor's relief to the Settlement Agreement. (*Id.* at SPC29420) (underlining added) Neither the government's correspondence of May 8, 2019 (app. supp. R4, tab 65 at SPC29202) nor its prior COFD of May 20, 2019 (app. supp. R4, tab 64 at SPC29203) described the termination for convenience as one at "no-cost" to the government. We find that the COFD of November 25, 2019 is conditional and equivocal, due to the

7

government's reiteration of its right to reinstate the default termination under certain circumstances.

*The Parties' Pleadings in ASBCA No. 62301*

21. On December 9, 2019, the Board received S&P's appeal from its June 13, 2019 claim, and docketed it as ASBCA No. 62301. In appealing the COFD of November 25, 2019 denying appellant's claim for termination costs (ASBCA No. 62301 (62301) compl. ¶¶ 19-20), S&P's January 10, 2020 complaint requested relief "in the amount of $10,990,891 plus interest" (*id*. at 3). This pleading referenced ASBCA No. 59980, S&P's appeal from the default termination of May 5, 2015 (*id*. ¶¶ 4-5).

23. S&P asserts that "[m]aterial consideration for the Settlement Agreement" of August 22, 2016 "included the execution and performance of the Takeover Agreement by the Government and S&P's performance bond sureties" (62301 compl. ¶ 6). Appellant contends that "Article 4 of the Settlement Agreement states that 'S&P reserves all rights against the Government with respect to seeking judicial enforcement of the terms set forth in this Agreement and any attachments thereto'" (*id*. ¶ 8). S&P says it was notified by the government by letters dated May 8, 2019 and May 15, 2019 that the government "was conditionally converting the default termination into a termination for convenience" (*id*. ¶ 16).

24. Appellant alleges that although "the Sureties assumed the responsibility for completion of the Project under the Takeover Agreement, S&P remained liable for all excess completion costs incurred by the Sureties by virtue of S&P's indemnity obligations to the Sureties" (62301 compl. ¶ 10). S&P maintains that "[t]he Government materially breached the Takeover Agreement by, among other things, failing to timely engage the [DOR] and refusing to negotiate change orders in good faith and refusing to pay for the performance of work outside the scope of the Takeover Agreement" (*id*. ¶ 11). Appellant's requested relief is that No. 62301 be sustained in the amount of $10,990,891 (*id*. at 3).

25. The government's answer in No. 62301 raises two affirmative defenses. Its first is that S&P is estopped from "bas[ing] its appeal on an alleged breach of the Takeover Agreement" because it is not a party to that agreement nor is it a third party beneficiary under the terms of that document. The government asserts that S&P's sureties, who were parties to the Takeover Agreement, "entered into two bi-lateral [contract] modifications ([Nos.] P00039 and P00040) (R4, tabs 60 and 61)." It says the sureties "expressly waived and released the government from any claim arising from the matters addressed in the two modifications." (62301 answer at 4)

26. The second affirmative defense asserted by the government in No. 62301 is that there is a failure of a condition precedent. It contends:

Notwithstanding the government's full compliance with the default termination conversion requirement in the Settlement Agreement, Appellant failed to dismiss the default termination appeal and instead now takes the inconsistent position that Appellant can both maintain a separate appeal of a prior, now rescinded default termination, and at the same time pursue a wholly new appeal jurisdictionally-premised on a new termination for convenience decision that facially withdrew the default termination.

(62301 answer at 5)

*The Government's Motion to Dismiss ASBCA No. 62301*

27. In response to the Board's Order of February 26, 2020, the government on April 10, 2020 clarified that its motion to dismiss No. 59980 also extended to No. 62301 (gov't resp. dtd. April 10, 2020 at 3-7). The government alleges that both appeals are moot:

> To the extent that ASBCA No. 62301 challenges the propriety of the underlying default termination, the Navy's pending Motion to Dismiss [in ASBCA No. 59980] is equally applicable to S&P's latest appeal, which should also be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

(*Id*. at 3)

The government maintains that "execution of the Settlement Agreement (R4, tab 58) between the parties, and the subsequent conversion of the default termination, (R4, tab 64) leaves nothing remaining in the original Default Termination Appeal for the Board to adjudicate" (gov't resp. dtd. April 10, 2020 at 4).

28. S&P's response of August 28, 2020 contested the government's motion to dismiss Nos. 59980 and 62301 (app. resp. dtd. August 28, 2020; *see also* app. mot. dtd. July 31, 2020 and exhibits thereto). Appellant asserts, among other things, that S&P is entitled to prove that the release in the Settlement Agreement is "voidable" because the government "knowingly made false representations in its May 5, 2015 termination for default letter [which] induc[ed] S&P to sign" the Settlement Agreement." S&P contends that "these factual assertions must be assumed to be factually correct by the Board when ruling on the Navy's Motion to Dismiss." (App. resp. dtd. August 28, 2020 at 4) S&P

9

defended not having previously reviewed "at least 18,844 pages of discovery responses [served by the Navy] on or about April 8, 2016," as appellant was then directing its attention to negotiating the Settlement Agreement (*id*. at 5). Appellant maintains that the government is not entitled to enforce the release agreed to by S&P in the Settlement Agreement due to the "Navy's prior material breach of the Settlement Agreement" (*id*. at 6).

*Appellant's Claim for 296 Days of Delay and the Government's COFD in ASBCA No. 62714*

29. Although S&P's delay claim of July 29, 2020 underlying ASBCA No. 62714 is not part of the government's motion to dismiss, it is included in this SOF because assertions and evidence therein are relevant to the overall record. According to appellant, this claim was submitted to comport with the Board's holding in *DCX-CHOL Enters., Inc.*, ASBCA Nos. 61636, 61637, 19-1 BCA ¶ 37,394 at 181,800. S&P interprets this decision to stand for the proposition that "if an Appellant wanted to rely upon a claim for a time adjustment to the contract for changes and delays to defend a default termination, such claims have to be separately submitted as certified claims." (App. supp. R4, tab 67 at SPC29422-23)

30. S&P explained that its "certified claim for a time extension of 296 days to the May 20, 2015 completion date" and subsequent appeal in No. 62714 were made "[i]n order to preserve this delay defense to the default termination" (app. supp. R4, tab 67 at SPC29422-23). S&P characterized 294 of the 296 days it seeks as "compensable delay," whereas the remaining two days were for "excusable delay." It maintains that "even if the Navy proves there were concurrent delays to the 294 days of compensable delay, S&P would still be entitled to a time extension of 296 days." (*Id*. at SPC29429)

31. Appellant says that in preparing for trial in Nos. 59980 and 62301, its expert scheduling witness "this year [2020] discovered internal Navy documents that demonstrate that the Navy intended to terminate S&P for default as early as February 5, 2015." Among the "thousands of pages produced in discovery" was an internal government email from LT Kena Montgomery of February 5, 2015. Appellant says this email shows that S&P was required to repeatedly perform certain work. It includes this statement: "Additionally, **if S&P can at least get the building buttoned up before we T4D**, this would be extremely beneficial for the project." (App. supp. R4, tab 67 at SPC29423) (emphasis added by appellant)

32. Appellant also maintains that the government failed to provide S&P with time extensions even though "the Navy's internal schedule analysis agreed that changes were delaying the critical path" (app. supp. R4, tab 67 at SPC29424). S&P asserts that the government knowingly made false statements in its May 5, 2015

10

COFD terminating the contract for default due to the contractor's untimely performance (*id*. at SPC29425-27).

33. The contractor contends that the government has "demonstrate[d] the bad faith nature of the default termination," and points to the allegedly contradictory manner in which the government required S&P to support ongoing schedule updates (app. supp. R4, tab 67 at SPC29427-29). Appellant says that "[b]y withholding contract modifications because the Navy did not have full funding to pay for them, the Navy set S&P up for a pre-planned termination for default." The contractor maintains that the government "continued right up until it terminated S&P's contract to direct [appellant] in bad faith [to perform] changes for which [the government] had no intent to pay." (*Id*. at SPC29429)

34. Accompanying the contractor's claim in No. 62301 is a sworn statement from George Pontikes, the company's CEO and an owner (R4, tab 65 at GOV29209-13). Mr. Pontikes said he signed the Settlement Agreement on behalf of S&P (*id*. at GOV29209 ¶ 3) under the assumption that the government's statements in the May 5, 2015 COFD were made in good faith, even though he did not agree with them (*id*. ¶ 5). He said that counsel for S&P were not asked at that time to review the many documents produced by the government in discovery, but to focus on settling the dispute (*id*. ¶ 4).

35. Mr. Pontikes stated that he was unaware at the time he signed the Settlement Agreement of an internal government email from LT Montgomery, which Mr. Pontikes said "indicates that the Navy had decided to terminate the contract for default as early as February 5, 2015" (R4, tab 65 at GOV29210 ¶ 6). Mr. Pontikes says he did not know then that the government "never intended to pay S&P any progress payments, and would fabricate bogus withholdings to excuse non-payment until S&P had 'buttoned up' the building before the Navy terminated S&P for default" (*id*. ¶ 7).

36. Mr. Pontikes averred that he did not know before signing the Settlement Agreement that the government "had acknowledged numerous times internally that changes delayed S&P's critical path work before May 5, 2015." He said internal government documents led appellant's consultant Mr. Rudolph[5] to conclude, among other things, that the government had funding issues that affected its ability to award change orders and that it did not include a time extension in unilateral Contract

---

[5] Mr. Tygue Rudolph, a consultant with Synergen, prepared a scheduling analysis for S&P dated July 29, 2020 that he submitted with his sworn statement dated July 30, 2020. *See* S&P's July 31, 2020 motion for leave to supplement the record in response to the government's motion to dismiss (app. mot. dtd. July 31, 2020, ex. B).

Modification No. P00026 dated March 13, 2015 despite having contemporaneous substantiation for 114 days of compensable delay (R4, tab 65 at GOV29210-13 ¶ 8)

37. Mr. Pontikes said that had he known at the time of the things referenced in ¶¶ 6-8 of his statement, he would have shared the information cited by Mr. Rudolph with S&P's sureties "to demonstrate that the Navy did not act in good faith when it sent the May 5, 2015 letter and knowingly made false statements in it." Instead, he "would have shown [the documents referenced in ¶¶ 6-8] to the sureties." Mr. Pontikes "would have told the sureties that based upon this evidence, they should not agree to any Takeover Agreement and permit S&P to litigate the merits of the default termination." (R4, tab 65 at GOV 29213 ¶ 9)

*Appellant's Motion for Leave to File Supplemental Opposition and the Government's Opposition to That Motion*

38. S&P on July 31, 2020, moved for leave to supplement the record in response to the government's motion to dismiss ASBCA Nos. 59980 and 62301 (app. mot. dtd. July 31, 2020). S&P says that it did not review particular documents it now wishes to rely upon when these were received in discovery, because it was engaged from April to August 2016 in detailed negotiations over the Settlement Agreement (*id.* at 2).

39. Despite government opposition (*see, e.g.*, gov't opp'n dtd. August 23, 2020), the Board has allowed S&P to supplement the record as the government's objections are not persuasive. While we do not commend appellant for its delay, the majority of documents relied upon by appellant in this motion are government documents and the government failed to show that it would be unduly prejudiced by supplementation of the record.

40. The government's further objection to S&P's raising additional issues (such as those grounded in delay and assertions of a lack of good faith and fair dealing and/or acts of bad faith on the part of the government) is that appellant allegedly waived these in ¶ 4 of the Settlement Agreement. The government quotes from that paragraph, in which S&P:

> releas[es] and forever discharg[es] the Government "from any claims or liabilities in connection with, arising out of or incidental to Contract No. N69450-12-C-0754, and to the disputes, claims and litigation [in] ASBCA No. 59980, including those claims that may arise in the future, whether or not actually contemplated by the parties, and including liabilities, obligations, appeals, actions or demands, known or unknown, whether or not previously asserted, existing

12

or arising in the future without reservation, for equitable adjustment, costs, impacts, withholdings, liquidated damages, interest, attorneys['] fees and expenses . . . ."

(Gov't opp'n dtd. August 23, 2020 at 7 (citing R4, tab 58 at GOV29106 ¶ 4)) (underlining added by the government)

*The Parties' Motion to Stay ASBCA No. 62714*

41.  In response to the Board's inquiry of November 12, 2020, the government on November 19, 2020 advised that it did not intend to add ASBCA No. 62714 to its motion to dismiss Nos. 59980 and 62301.  The Board granted the parties' joint request to stay briefing the government's separate motion to dismiss ASBCA No. 62714 until a ruling has been issued on the government's motion to dismiss Nos. 59980 and 62301.

## DECISION

*Standard of Review*

In response to the Board's direction that it more fully state the basis for its motion to dismiss Nos. 59980 and 62301, the government responded that it is made pursuant to Fed. R. Civ. P. 12(b)(1) (gov't resp. dtd. April 10, 2020 at 3); appellant agrees this rule applies (app. reply dtd. February 24, 2020 at 2-3).  This provision allows a party to file a motion asserting a "lack of subject-matter jurisdiction" as "a defense to a claim for relief."  Fed. R. Civ. P. 12(b)(1).  Where, as here, the ASBCA's rules are silent with respect to such a motion (*see, e.g*., Board Rule 7 Motions), the Board looks to the Federal Rules of Civil Procedure in making its decision.  *L-3 Commc'ns Integrated Sys., L.P.*, ASBCA No. 60713, 17-1 BCA ¶ 36,865 at 179,624.

In accordance with Fed. R. Civ. P. 12(b)(1), the Board must dismiss any appeal that does not fall within its subject matter jurisdiction.  In making that determination, we must "accept as true, and construe in a light most favorable to the non-movant, only undisputed factual allegations."  *Agility Defense & Gov't Servs., Inc.*, ASBCA Nos. 58870, 59261, 15-1 BCA ¶ 35,810 at 175,133 (citing *Line Gov't Servs., LLC*, ASBCA No. 58561 *et al*., 14-1 BCA ¶ 35,473 at 173,933); *see also Scheur v. Rhodes*, 416 U.S. 232, 236 (1974) ("the allegations of the complaint should be construed favorably to the pleader").  Although motions made under Fed. R. Civ. P. 12(b)(1) cannot be converted to a motion for summary judgment under Fed. R. Civ. P. 56, the body of case law arising from the latter rule "offers guidance in considering evidence submitted outside of the pleadings."  *Kamran Zaland Supplies & Servs.*, ASBCA No. 61339, 19-1 BCA ¶ 37,475 at 182,049-50 (citing *Gordon v. Nat'l Youth Work Alliance*, 675 F. 2d 356, 360-61 (D.C. Cir. 1982)).

13

In ruling on Fed. R. Civ. P. 12(b)(1) motions, "when the jurisdictional facts are intertwined with the merits of the appeal, the Board should leave the jurisdictional determination until the hearing." *L-3 Commc'ns*, 17-1 BCA ¶ 36,865 at 179,625 (citing 2 MOORE'S FEDERAL PRACTICE 3D § 12.30[3]).

*The Parties' Contentions*

It is unquestioned that appellant timely appealed in No. 59980 after the government's COFD terminated the contract for default, and in No. 62301 following a later COFD that denied appellant's monetary demand (SOF ¶¶ 4, 22). However, the government contends the Board was divested of subject matter jurisdiction after ASBCA No. 59980 was filed. It attributes this to the government's withdrawing the COFD defaulting the contractor then converting it to a termination for convenience, as was contemplated by the parties' Settlement Agreement. The government argues this renders these appeals moot because there is no longer a default COFD underpinning them, and S&P has received all of the relief it requested. (*See, e.g.*, gov't memorandum dtd. July 15, 2019 at 8-20)

We address the government's arguments concerning whether: (1) the government's withdrawal of the default COFD moots the appeals; (2) the government is shielded by the entireties clause of the Settlement Agreement from the allegedly inappropriate actions complained of by appellant; and (3) the "Release by S&P" clause of the Settlement Agreement precludes the contractor from bringing these appeals. We also address S&P's assertions of bad faith on the part of the government and that the government breached its duty of good faith and fair dealing, which are relevant to the motion.

> 1. *The Government's Withdrawal of the COFD Terminating the Contract for Default and Conversion to a "No Cost" Termination for the Convenience of the Government Did Not Moot the Appeals*

The government asserts that "because the Default Termination conversion rescinded the Default Termination decision, there is no longer a contracting officer's final decision before the Board for review. As such, the Board no longer has jurisdiction to entertain S&P's new theories" (gov't memorandum dtd. July 15, 2019 at 8). It argues that "S&P fails to demonstrate that it is reasonably likely that the actual legal scenario that could trigger the Navy's hypothetical option to reinstate the default termination will ever occur" (gov't resp. dtd. August 22, 2019 at 2). We reject these contentions.

An appeal should be dismissed as moot "[w]hen, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in

14

controversy between the parties are no longer at issue." *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007). The decisions relied upon by the government support dismissal and a finding of mootness where the termination for default is withdrawn without equivocation and the contractor was afforded such relief as had been agreed upon (*see, e.g.*, gov't mot. dtd. May 30, 2019 at 1-3 and gov't memorandum dtd. July 15, 2019 at 11-14 (citing, *inter alia*, *Quimba Software, Inc.*, ASBCA No. 59197, 19-1 BCA ¶ 37,750 at 181,613-14; *L-3 Commc'ns Integrated Sys., L.P.*, ASBCA Nos. 60431, 60432, 16-1 BCA ¶ 36,362 at 177,253; *AeroVironment, Inc.*, ASBCA Nos. 58598, 58599, 16-1 BCA ¶ 36,337 at 177,182; *Lasmer Indus., Inc.*, ASBCA Nos. 56946, 56966, 11-1 BCA ¶ 34,671 at 170,801; *Combat Support Assocs.*, ASBCA Nos. 58945, 58946, 16-1 BCA ¶ 36,288 at 176,974; *Teddy's Cool Treats*, ASBCA No. 58384, 14-1 BCA ¶ 35,601 at 174,410)).[6] The government further contends that "S&P fails to demonstrate that it is reasonably likely that the actual legal scenario that could trigger the Navy's hypothetical option to reinstate the default termination will ever occur" (gov't resp. dtd, August 22, 2019 at 2).

Each of these decisions can be factually distinguished from the instant appeals, and do not support the government's motion. These dealt with situations in which the COFD withdrawing the default termination was unequivocal, which is our threshold inquiry. Because the government failed to show that the COFDs of May 20, 2019 and November 25, 2019, which underpin ASBCA Nos. 59980 and 62301 respectively, were "unequivocal" (*see* SOF ¶¶ 14, 21), it has not established that these appeals are moot.

We are unpersuaded by the government's assertion that "S&P fails to demonstrate that it is reasonably likely that the actual legal scenario that could trigger the Navy's hypothetical option to reinstate the default termination will ever occur" (gov't resp. of 8/22/19 at 2). This is inadequate to rebut appellant's position that these COFDs are equivocal (*see* app. opp'n dtd. July 30, 2019 at 1-5), especially where these plainly state the government's reservation of the right to reinstate the default (SOF ¶¶ 14, 21). The circumstances for reinstatement include a successful challenge by appellant before the Board or a court of competent jurisdiction. While we emphatically make no finding or prediction regarding the ultimate success (or failure) of S&P's appeals, appellant has put the issue of the validity of the Settlement Agreement before a competent tribunal. By lodging these appeals, appellant has initiated litigation that brings provisions of the Settlement Agreement into question.

Nor has the government furnished any evidence, such as a statement or declaration by the CO, that these COFDs are unequivocal and that the government will

---

[6] *Teddy's Cool Treats* can be further distinguished factually, as the government there changed the termination for default to a notice termination as permitted under that contract. *See Teddy's Cool Treats*, 14-1 BCA ¶ 35,601 at 174,410.

not reinstate the default; we have only unsupported argument. "Mere allegations without substantiated explanatory facts that support the statements or corroborative evidence are not sufficient to carry the necessary burden of proof." *Rig Masters, Inc.*, ASBCA No. 52891, 03-2 BCA ¶ 32,294 at 159,793 (citing *C Constr. Co., Inc.*, ASBCA No. 47928, 96-2 BCA ¶ 28,499 at 142,313).

2. *There Are Triable Issues Regarding the Government's Alleged Breach of the Duty of Good Faith and Fair Dealing But Not Whether It Acted in Bad Faith*

As S&P's allegations of bad faith and/or lack of good faith and fair dealing (*see, e.g.*, SOF ¶¶ 15, 28, 31-37; app. reply dtd. April 17, 2020 at 3-6; app. reply dtd. August 29, 2019; app. opp'n dtd. July 30, 2019 at 4, 9-14) are relevant to the government's arguments that the "Entirety of Agreement" and "Release by S&P" clauses support its motion to dismiss (*see, e.g.*, gov't resp. dtd. January 22, 2021 at 1-3; gov't opp'n dtd. August 23, 2020; gov't resp. dtd. August 22, 2019), we address in this section whether appellant has raised triable issues before examining the effect of those clauses.

The government denies S&P's assertions of bad faith and lack of good faith and fair dealing. It cites *United Healthcare Partners, Inc.*, ASBCA No. 58123, 16-1 BCA ¶ 36,374 at 177,321-22 for the proposition that "A party alleging bad faith by the government faces a high burden, requiring a 'showing by clear and convincing evidence that a contracting officer acted with the specific intent to injure appellant.'" The government emphasizes that government employees are entitled to a presumption of having acted in good faith. (Gov't resp. dtd. August 22, 2019 at 5)

Because government officials are presumed to carry out their duties in good faith, "clear and convincing" evidence of "a specific intent to injure" the contractor is required to establish they acted in bad faith. *Road & Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368-69 (Fed. Cir. 2012) (citing *Am-Pro Protective Agency v. United States*, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002)). Contractors rarely succeed in satisfying this heavy burden of proof. *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996). We find that S&P has failed to show bad faith on the part of the government's employees, and this argument is unsuccessful in resisting the government's motion.

However, we reach a different result with respect to whether there are triable issues arising from appellant's allegations regarding the government's duty to demonstrate good faith and fair dealing. This is a fundamental responsibility, as "[e]very contract imposes upon each party an implied duty of good faith and fair dealing in its performance and enforcement." *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting RESTATEMENT (SECOND) OF CONTRACTS

§ 205 (1981)).  This obligation is breached when a party "fails to abide by this implied duty, which includes 'the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.'"  *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) (citing *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)).

This legal theory carries a lesser evidentiary burden than establishing that the government acted in bad faith.  It is unnecessary that its proponent show intent to injure, as evidence of "specific targeting" a contractor is not "a requirement for a showing of breach" of the duty of good faith and fair dealing.  *Metcalf*, 742 F.3d at 993.  The requirement of good faith and fair dealing includes the duty to cooperate, as "[w]hat is promised or disclaimed in a contract helps define what constitutes 'lack of diligence and interference with or failure to cooperate in the other party's performance.'"  *Id*. at 991 (citing *Malone v. United States*, 849 F. 2d 1441, 1445 (Fed. Cir. 1988)).

We are required to construe disputed material facts in favor of S&P as the non-movant, even though this motion is made under Fed. R. Civ. P. 12(b)(1) and not Fed. R. Civ. P. 56 (*see* "*Standard of Review*," *supra*).  Adhering to this guidance, we find that S&P raised triable issues regarding whether the government breached its duty of good faith and fair dealing toward the contractor.  *See, e.g.*, *SIA Constr. Inc.*, ASBCA No. 57693, 14-1 BCA ¶ 35,762 at 174,986 (citing *Coastal Gov't Servs., Inc*., ASBCA No. 50283, 99-1 BCA ¶ 30,348 at 150,088).

### 3. *The Entireties Clause of the Settlement Agreement Does Not Render Irrelevant Appellant's Assertions of Government Bad Faith and/or Lack of Good Faith and Fair Dealing*

The government challenges the evidentiary importance of S&P's allegations that the government did not act in good faith prior to and/or showed bad faith surrounding the making and implementation of the Settlement Agreement and the Takeover Agreement.  It asserts that appellant "attempts to cloud the issues by lobbing insinuations concerning, among other things, the development of the Settlement Agreement."  The government maintains that "S&P's attempted reliance on the pre-Settlement [Agreement] history is legally and factually misplaced, as well as precluded by the very terms of the Settlement Agreement.  The Settlement Agreement includes an Entireties clause … that renders irrelevant any pre-Settlement communications."  (Gov't resp. dtd. August 22, 2019 at 6)  The government cites ¶ 17 "Entirety of Agreement," which provides:

> [t]his Agreement constitutes the whole of the
> understanding, discussions, and agreements by and
> between Government and S&P.  The terms and provisions

of this Agreement are contractual and not mere recitals. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement.

(*Id.*; *see also* SOF ¶ 8)

The government errs in relying upon this argument to sustain dismissal, and furnishes nothing to support that the information and communications cited by appellant fall within the parties' negotiations that typically are within the purview of an entireties clause. As discussed in § 2 *supra*, S&P sufficiently raised disputed material facts to avert dismissal under Fed. R. Civ. P. 12(b)(1) regarding whether the government breached its duty of good faith and fair dealing. Triable issues include whether the government withheld meritorious contract modifications for time extensions, and withheld or delayed payment due to lack of funds; these are not precluded by the Settlement Agreement's entireties clause. These assertions are material, as S&P says it was unaware of these actions at the time and that the government then wrongly defaulted S&P for not meeting the schedule, which caused it to agree to the Settlement Agreement. (*See* SOF ¶¶ 15, 28, 31-37)

The government offered no evidence (other than argument) to counter these allegations. It cited no authority for the proposition that the Settlement Agreement's entireties clause renders irrelevant (and therefore immaterial) allegedly inappropriate actions on the part of the government, such as bad faith and/or the lack of good faith and fair dealing (*see, e.g.*, gov't resp. dtd. August 22, 2019; *see also* SOF ¶¶ 15, 28, 31-37). We find that the government's reliance on the entireties clause does not support its motion to dismiss.

4. *There Are Triable Issues Regarding Whether the Settlement Agreement's "Release by S&P" Clause Supports Dismissal*

The government asserts that ¶ 4, the "Release by S&P" clause of the Settlement Agreement, does not allow S&P to bring the appeals in question or raise the defenses relied upon. This contention was made in the context of objecting to S&P's motion to supplement the record regarding the government's allegedly false statements, which S&P says induced it to enter into the Settlement Agreement. (Gov't resp. dtd. August 23, 2020 at 6-8) The government relies upon ¶ 4 of the Settlement Agreement, which provides in relevant part that the contractor agrees to:

[r]emise, release, and forever discharge the Government, its officers, agents, and employees from any claims or liabilities in connection with, arising out of or incidental to Contract No. N69450-12-C-0754 and to the disputes,

claims, and litigation at the ASBCA [in] No. 59980, including those claims that may arise in the future, whether or not actually contemplated by the parties, and including liabilities, obligations, appeals, actions or demands, known or unknown, whether or not previously asserted, existing or arising in the future without reservation, for equitable adjustment, costs, impacts, withholdings, liquidated damages, interest, attorney's fees and expenses under the Equal Access to Justice Act, and including any other avenue of relief at law, equity, under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613, the United States Constitution, the Tucker Act, 28 U.S.C. §1491, or otherwise, except that S&P reserves all rights against the Government with respect to seeking judicial enforcement of the terms set forth in this Agreement and any attachments thereto.

(R4, tab 58 at GOV29196-97 ¶ 4; *see also* SOF ¶ 8)

Although S&P agreed to this broad release of claims in ¶ 4 of the Settlement Agreement, we find there are disputed material facts regarding whether the government breached its duty of good faith and fair dealing. Construing these as we must in favor of S&P as non-movant (*see Standard of Review, supra*), this argument does not support the government's motion to dismiss. Although a general release typically forecloses a contractor from later seeking compensation for acts that took place before it was executed, there are circumstances in which a contractor's release does not bar subsequent claims. These include situations involving fraud, duress, mutual mistake, and the parties' continued consideration of a claim that indicates it was not abandoned by the release. *See, e.g.*, *Carol D. Jones*, ASBCA No. 61080, 17-1 BCA ¶ 36,757 at 179,143; *J.G. Watts Constr. Co. v. United States*, 161 Ct. Cl. 801, 807 (1963); *Winn-Senter Constr. Co. v. United States*, 110 Ct. Cl. 34, 65-66 (1948).

At this stage, we cannot determine whether the government's alleged lack of good faith and fair dealing falls within the exceptions listed above. In addition to disputed material facts, we find that the record is not adequately developed to ascertain whether the release applies to ASBCA Nos. 59980 and 62301. This warrants denial of the government's motion to dismiss on this basis.

19

## CONCLUSION

The parties have extensively briefed the government's Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (*see, e.g.*, SOF ¶¶ 15-17, 27-28, 38-40; n.1). The government has advanced multiple arguments to justify its motion to dismiss ASBCA Nos. 59980 and 62301, and we have carefully considered each whether discussed herein (or not). We hold that the government's withdrawal of the termination for default was not unequivocal; appellant has raised triable issues regarding the government's alleged breach of the duty of good faith and fair dealing; and the government failed to establish that either the "Entirety of Agreement" or "Release by S&P" clauses of the Settlement Agreement support its motion. Because "jurisdictional facts are intertwined with the merits of the appeal," we "leave the jurisdictional determination until the hearing." *See, e.g.*, *L-3 Commc'ns*, 17-1 BCA ¶ 36,865 at 179,625 (citing 2 MOORE'S FEDERAL PRACTICE 3D § 12.30[3]). We deny the government's motion.[7]

Dated: June 3, 2021

_____
REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

_____
RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

_____
OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[7] We make no findings regarding S&P's argument that it is not bound by the release in the Settlement Agreement because the government breached the Takeover Agreement, as it is not necessary for purposes of deciding the motion.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59980, 62301, Appeals of Satterfield & Pontikes Construction, Inc., rendered in conformance with the Board's Charter.

Dated:  June 3, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals